[No. 41968. En Banc. August 3, 1972.]

GUS RODY et al., *Respondents*, v. WALTER D. HOLLIS et al., *Appellants*.

*Slade Gorton, Attorney General,* and *Morton M. Tytler, Assistant,* for appellants.

*Alan N. Rasmussen,* for respondents.

FINLEY, J.—In this case the Washington State Human Rights Commission is appealing from the decision of the superior court that the act of the legislature, RCW 49.60.225, authorizing an administrative tribunal appointed by the commission to award damages up to $1,000 for discrimination in real property transactions, is an unconstitutional delegation of legislative power.

The facts of this case can be briefly summarized as follows: The Washington State Human Rights Commission received a complaint from Mr. and Mrs. Hollis charging

Mr. and Mrs. Rody with racial discrimination in a real property transaction. The complaint alleged that the Rodys had refused to rent a house which they owned to the Hollises because the Hollises are black. In accordance with RCW 49.60.250, an administrative tribunal appointed by the commission conducted a hearing and found that the Rodys had discriminated against the Hollises in violation of RCW 49.60.222, a provision of the law against discrimination. The tribunal also found that the Gerlas, relatives of the Rodys, had aided and abetted them in their unlawful actions, by agreeing to buy the house after they knew that the Human Rights Commission was investigating the report of discrimination against the Hollises. Both the Rodys and Gerlas were ordered to cease and desist from these practices in the future. Pursuant to the authority granted to the administrative tribunal by RCW 49.60.225, the Rodys were ordered to pay $250 and the Gerlas were ordered to pay $100 to the Hollises.

The Rodys and Gerlas appealed the tribunal's decision to the superior court, under RCW 34.04.130 and 49.60.270. The superior court affirmed the tribunal's finding that the Rodys had discriminated against the Hollises but dismissed the complaint against the Gerlas, reasoning that they had committed no acts prior to or contemporaneous with the principal discrimination and thus did not aid or abet such discrimination within the meaning of RCW 49.60.220. The superior court also held that RCW 49.60.225, which allows a hearing tribunal to award a civil penalty for housing discrimination of up to $1,000, is an unconstitutional delegation of legislative power in violation of the Washington State Constitution. Thereupon, the superior court struck and voided the award of $250 which the commission had ordered to be paid to the Hollises by the Rodys.

The Human Rights Commission, in bringing this appeal, urges that the lower court erred in not affirming and enforcing the order of the hearing tribunal in its entirety.

The first issue on appeal is the constitutionality of the delegation to the hearing tribunal of the power to deter-

mine the amount of fines for discrimination in real property transactions. This power is granted by RCW 49.60.225, which provides as follows:

> When a determination has been made under RCW 49.60.250 that an unfair practice involving real property has been committed, the board or its successor may, in addition to other relief authorized by RCW 49.60.250, award the complainant up to one thousand dollars for loss of the right secured by RCW 49.60.010, 49.60.030, 49.60.040 and 49.60.222 through 49.60.226 to be free from discrimination in real property transactions because of race, creed, color or national origin.

We agree with the Human Rights Commission that this statute does not constitute an unconstitutional delegation of power to an administrative agency.

It is the rule in this state that legislative power may not be delegated to an administrative agency without the prescription of reasonable standards. *See Caffall Bros. Forest Prods., Inc. v. State,* 79 Wn.2d 223, 484 P.2d 912 (1971), *Keeting v. PUD 1,* 49 Wn.2d 761, 306 P.2d 762 (1957). The legislature must provide standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it.

In the instant case the requisite standards can be gleaned directly and by implication from the legislative provisions themselves. The legislature has defined in general terms what is to be done; damages up to $1,000 are to be awarded for discrimination in real property transactions. The legislature has indicated the administrative body which is to do this—a hearing tribunal established under RCW 49.60.250. Under RCW 49.60.225, the hearing tribunal is authorized to

> award the complainant up to one thousand dollars for loss of the right . . . to be free from discrimination in real property transactions because of race, creed, color or national origin.

We believe that it is perfectly clear what the award is to be for; the only discretion left to the hearing tribunal is to determine the amount of the award. And where the pur-

pose of the award is made clear—to provide damages for loss of the right to be free from discrimination in housing transactions—it is clear by implication that the *amount* of the award is to be adjusted to accomplish these purposes. Standards to guide administrative action need not, and cannot, be perfectly specific. This is particularly so where the power which is exercised is quasi-judicial in nature, as in the instant case. Judicial power is traditionally and of necessity largely discretionary and standardless. The judicial process operates upon individuals and, in so doing, attempts to treat them as such. All that can, and should, be done is to define the conduct sought to be punished, or the injury to be compensated, set out the *normally acceptable limits of punishment or compensation,* and then allow the adjudicative body to determine the appropriate punishment or compensation by applying general principles of morality and traditional concepts of justice.

In the federal courts it has long been established. that Congress may authorize an agency to issue regulations the violation of which is criminal, as well as to fix monetary penalties of a civil nature. 1 K. Davis, Administrative Law § 2.13 (1958). More recently, in *Jackson v. Concord Co.,* 54 N.J. 113, 253 A.2d 793 (1969), the Supreme Court of New Jersey upheld the right of a civil rights administrator to award money damages against a landlord for discrimination in the rental of housing.

An additional factor which tends to establish the constitutionality of a delegation of legislative power is the existence of procedural safeguards to control arbitrary administrative action and guarantee due process of law to individuals and entities affected by such administrative action. We are convinced that in the instant case appropriate procedural safeguards are provided and the requirements of due process are met.

■ Due process of law is defined in *Cuddy v. Department of Pub. Assistance,* 74 Wn.2d 17, 19, 442 P.2d 617 (1968), as follows:

The constitutional elements of procedural due process,

and thus of a fair hearing, are: notice; an opportunity to be heard or defend before a competent tribunal in an orderly proceeding adapted to the nature of the case; an opportunity to know the claims of opposing parties and to meet them; and a reasonable time for preparation of one's case.

A "competent tribunal" may very well be an administrative officer or body, as well as a court. *Lloyd Sabaudo Societa Anonima Per Azioni v. Elting,* 287 U.S. 329, 77 L. Ed. 341, 53 S. Ct. 167 (1932). We are satisfied from the record in this case and from the relevant statutory provisions that the hearing and appeal procedure for the Human Rights Commission tribunal, as detailed in RCW 49.60.250 and 49.60.270, and as carried out in this case, meets the requirements of due process. The absence of such provisions for notice, hearing and factual record in *United States Steel Corp. v. State,* 65 Wn.2d 385, 397 P.2d 440 (1964), justified the striking down in that case of a tax commission power to assess interest on delinquent taxes in any amount up to 6 per cent.

Having concluded that the judicial power exercised by this tribunal was properly delegated to it, we can only conclude that the tribunal's power to fix the amount of the penalty is consistent with due process, since the exercise of similar power by courts of law is universal and has been consistently upheld. *See Ohio ex rel. Lloyd v. Dollison,* 194 U.S. 445, 48 L. Ed. 1062, 24 S. Ct. 703 (1904); *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968).

■ The second and final issue on appeal involves the contention of the Human Rights Commission that the superior court erred in holding that RCW 49.60.220, the aiding and abetting section, does not cover the conduct of the Gerlas in this case because it took place after the discrimination of the Rodys had occurred and was completed.

We do not agree that the superior court erred in this regard. However, we do not base our conclusion on the reasoning proposed by the Rodys and Gerlas. Housing discrimination does not end when face-to-face contact between

the discriminator and the complainant ceases. It continues until all actions intended to deny the complainant his equal right to occupy the premises have ceased—in this case, until the Rodys had completed the disposal of their house to the Gerlas and had thereby put it forever beyond the reach of the Hollises.

Nevertheless, a commonsense interpretation of the statute based on its legislative history leads us to the conclusion that an individual cannot be said to have aided or abetted housing discrimination merely by purchasing real property which is the subject of a complaint before the Human Rights Commission, even if he knows of the existence of such complaint. In considering the housing discrimination law, the legislature rejected a proposed lis pendens remedy, under which all persons buying or leasing property subject to a housing discrimination complaint would take subject to the power of the commission to put the complainant in possession. It appears that this rejection was made on the grounds that such a provision would interfere with the finality of real property transactions.

Accordingly, we believe that an individual cannot be held to have aided and abetted housing discrimination unless he carries out the transaction for that purpose; mere knowledge of the complaint is not sufficient to constitute aiding and abetting. What is required is substantial proof that the individual in question has engaged in a transaction in which he would not otherwise have engaged, or participated in a fraudulent transaction, for the purpose of assisting housing discrimination. In the present case there is evidence that the Gerlas knew that the Hollises' complaint concerning the property had been filed at the time that they purchased the property. But there is no evidence that the Gerlas engaged in the transaction in order to further, aid, or abet housing discrimination. On the contrary, they had earlier expressed an interest in purchasing the house, only to be refused by the Rodys. The Rodys' change of mind on this matter is suggestive of *their* intent, but is irrelevant in regard to the Gerlas' intent. The conduct of

the Gerlas is not sufficient to constitute "aiding and abetting" under RCW 49.60.220.

The decision of the superior court that RCW 49.60.225 is unconstitutional is reversed and the $250 award to be paid by the Rodys is reinstated. The dismissal of the complaint against the Gerlas is affirmed.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.