[No. 46414. En Banc. February 21, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. KIRK N. BRYAN, *Appellant*.

*John Midgley* and *Patrick M. Billberg,* for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *Robin M. Force, Deputy,* for respondent.

HOROWITZ, J.—This case considers the constitutionality of sentencing provisions of the Juvenile Justice Act of 1977, RCW 13.40, and the validity of sentencing guidelines promulgated pursuant to that act.

The trial court, Cowlitz County Juvenile Department, found the sentencing standards established for fiscal year 1978–79 unconstitutional and committed appellant Kirk N. Bryan to the Division of Institutions for an indefinite period of time not to exceed his eighteenth birthday. The Court of Appeals, Division Two, certified the case to this court on the issue of constitutionality. We *reverse* the trial court's holdings of unconstitutionality and direct that Bryan instead serve an alternative sentence imposed by the trial judge after a finding of manifest injustice. RCW 13.40.160.

Bryan is now 15 years old. He has a history of criminal behavior. In August 1978 Bryan was again referred to Cowlitz County Juvenile Court for auto theft. The court made a finding of "manifest injustice," which allows sentencing of a juvenile in a manner inconsistent with the administratively prescribed sentence, RCW 13.40.020(12), .160, and committed Bryan to the Division of Institutions for a total of 27 weeks on two charges.[1] Pursuant to RCW 13.40.230, when Bryan appealed the manifest injustice disposition, he was released from custody after serving the few days' detention time prescribed by the sentencing standard for the offenses. That appeal is pending.

---

[1] Several sentencing alternatives are available in juvenile proceedings. The juvenile may be committed to the Division of Institutions for long–term custodial treatment. The juvenile may instead be sentenced to short–term detention in local facilities. Noncustodial alternatives include requiring the juvenile to provide a number of hours of community service, to attend counseling sessions, or to pay a fine or restitution to the victim of his offense. Probation may also be imposed, and rules of conduct established.

In November 1978 Bryan was charged, and later found guilty, of two counts of taking a motor vehicle without permission and one count of car prowling. Sentencing standards for these offenses would allow maximum detention of 6 days. Minimum–security treatment centers that might provide a longer–term alternative to detention were unwilling to take Bryan because of his history of criminal behavior.

Faced with the knowledge that a finding of manifest injustice would put Bryan out on the streets again after a few days' detention pending appeal, the trial court judge declared the sentencing guidelines provided by the Juvenile Justice Act of 1977 and administrative regulations promulgated pursuant to it unconstitutional and committed Bryan "straightaway." Alternatively, however, the court made a finding of manifest injustice and committed Bryan to the Division of Institutions for 48 weeks on the three charges. RCW 13.40.160.

We first wish to point out that the wisdom of sentencing guidelines is a question for the legislature and is not an issue for this court. The fact that dispositional standards would provide only a few days' detention, in addition to probation and community service time, for Bryan's offenses is immaterial here. Neither party has objected to the content of the Department of Social and Health Services (DSHS) guidelines; the State has not had the need nor opportunity to defend the content of the guidelines against a claim that they are arbitrary and capricious. The decision that the sentencing provisions are valid is based instead on our answers to the following legal questions:

1. Is RCW 13.40.030, which delegates to the Secretary of the Department of Social and Health Services the power to create juvenile disposition standards, an unconstitutional delegation of legislative or judicial power to an administrative agency?

2. Are juvenile disposition standards promulgated in 1977 pursuant to RCW 13.40.030 by DSHS invalid because the legislature was not called into session and thus was unable to review the standards in 1978?

# I

## CONSTITUTIONALITY OF DELEGATION

■ Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts. *State v. Monday,* 85 Wn.2d 906, 540 P.2d 416 (1975); *State v. Cerny,* 78 Wn.2d 845, 480 P.2d 199 (1971); *Hendrix v. Seattle,* 76 Wn.2d 142, 456 P.2d 696 (1969). A belief on the part of the judiciary that sentencing possibilities are inadequate goes to the wisdom of the dispositional standards and cannot be enough to overcome the legislatively prescribed range of punishment. "[The statutory scheme] is sufficient flexibility for sentencing judges, and, if not, it is the function of the legislature and not the judiciary to alter the sentencing process." *State v. Monday, supra* at 909–10. Thus, it is clear, and the respondent State concedes, that legislative delegation of sentencing power to an administrative agency does not encroach on the judiciary's power.

■ Whether the legislature can constitutionally delegate its own power to define sentences depends on the standards and safeguards accompanying the delegation:

> The constitutional requirements for such a delegation are that: (1) the legislature provides standards defining generally what is to be done and what body is to accomplish it; and (2) procedural safeguards be established to control arbitrary administrative action.

*Polygon Corp. v. Seattle,* 90 Wn.2d 59, 66, 578 P.2d 1309 (1978), citing *Rody v. Hollis,* 81 Wn.2d 88, 500 P.2d 97 (1972), and *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972).

· ■ Respondent State concedes the adequacy of standards in this case. RCW 13.40.030(1), (5), (6) and (7) provide an explicit set of standards governing the period of confinement or other supervision based on the offense committed and a wide range of other listed factors. The standards are at least as complete as those considered by this court in *State v. Mulcare,* 189 Wash. 625, 66 P.2d 360 (1937), in which the indeterminate sentence act establishing the

Prison and Parole Board to set sentences within legislatively prescribed maximums was upheld. For instance, RCW 13.40.030(1) provides that the sentencing standards must be established "on the basis of a youth's age, the instant offense, and the history and seriousness of previous offenses, but in no case shall the period of confinement and supervision exceed that to which an adult may be subjected for the same offense(s)." The section goes on to require that standards for sentencing "serious offenders" shall not be less than 30 days, and provides explicit restrictions on the possible lengths of time and sentencing alternatives that may be proposed. RCW 13.40.030(6) and (7) set out the permissible ranges of confinement in even greater detail.

The Juvenile Justice Act also provides safeguards against abuse in administrative promulgation of dispositional standards. The legislature reserves the right to review, adopt, or require modification of the proposed standards. RCW 13.40.030(2) and (3). After the first set of standards, the proposed guidelines will always be before the legislature in a year in which a legislative session is mandated. Const. art. 2, § 12. Although delegation cannot justify otherwise arbitrary and capricious administrative action, there is no claim or argument in this case that DSHS acted inappropriately in establishing the sentencing guidelines. Sufficient safeguards exist in the statute; the statutory scheme proposed clearly does not unconstitutionally delegate legislative functions to an administrative agency.

## II
### VALIDITY OF REGULATIONS

RCW 13.40.030(4) provides that the legislature "shall" consider proposed guidelines as prescribed by sections (2) and (3) of that statute. RCW 13.40.030(2) and (3) provide that the legislature "*may* adopt the proposed standards or refer the proposed standards to the secretary for modification." If the legislature takes no action, the standards go into effect automatically. RCW 13.40.030(3). (Italics ours.)

RCW 13.40.030(1) provides that DSHS shall propose guidelines to the legislature in even–numbered years; the disposition standards then can take effect in July in odd–numbered years after the legislature has been given an opportunity for review. However, in order to have effective standards for fiscal year 1978–79, the first year of the Juvenile Justice Act's operation, proposal of the first guidelines was necessary in 1977, an odd–numbered year. This is not provided for by section (1). Thus, section (4)'s obvious purpose is to provide justification for submission of standards in an odd–numbered year.

 Respondent State argues, however, that the use of the word "shall" in section (4) indicates the legislature's desire that the first set of guidelines promulgated by DSHS be given explicit attention by the legislature, and that the legislature's failure to consider the standards, notwithstanding the fact that a session during which they could have been reviewed was not called, invalidates them. The use of the word "shall" need not, however, compel action. "While as a general rule, the use of the word 'shall' in a statute is imperative and operates to create a duty, in each case the word is to be treated as mandatory or permissive, depending upon the intent of the legislature as determined by the ordinary rules of construction." *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 377, 561 P.2d 195 (1977).

 It must be presumed that the legislature intends to enact effective laws. Construing the word "shall" in section (4) in this instance to require legislative consideration of the first set of DSHS guidelines would make the statute, designed to provide a new sentencing framework for the state's juvenile justice system, ineffective for the first year of operation.[2] The legislators' ability to consider guidelines

---

[2]Declaring the sentencing guidelines invalid would present the additional practical difficulty of putting the effect of thousands of juvenile dispositions in doubt. Although no complete figures for the state are available, almost a thousand juveniles were "committed" during fiscal year 1978–79. These include only those juvenile offenders placed in secure facilities through the Division of Institutions; it

promulgated in an odd–numbered year would depend on the calling of a special session they themselves are powerless to convene. Const. art. 3, § 7. The legislature must have anticipated the possibility that it would not be called into session in 1978; section (3) provides that sentencing guidelines not acted on by the legislature would automatically take effect. In addition, it adopted with few modifications substantially similar guidelines submitted in 1979. These actions clearly indicate the legislature's intent that juvenile sentencing guidelines for 1978–79 take effect without explicit legislative review in 1978.

We believe the imperative "shall" in the section may properly be thought to apply more specifically to the time limits set for submission by the agency and consideration by the legislature of the first standards proposed under the act, rather than to require the legislature to review the contents of the first guidelines. This is evident from RCW 13.40.030(4), which provides that "the legislature shall consider" the guidelines only as provided in sections (2) and (3), which clearly define the legislature's review authority as nonmandatory. Thus, the guidelines are valid despite lack of legislative overview in 1978 because the legislature was not called into session that year. Henceforth, the standards will always be proposed in a year in which the legislature by constitutional mandate will meet. Const. art. 2, § 12.

Having upheld the Juvenile Justice Act of 1977 and sentencing procedures under it, we overturn the trial court's indeterminate commitment of Bryan and turn to the validity of its alternative finding of manifest injustice. Both parties have urged us to uphold this disposition if the statute and guidelines were found constitutional. A review of

does not include the many more children found guilty of less severe crimes or with more encouraging records who were sentenced to a few days' detention, to perform hours of community service, or to serve time on probation. As an example of the great number of cases processed by the juvenile courts of this state, during fiscal year 1978–79 the King County juvenile system handled dispositions in over 6,000 offenses.

the record reveals "that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range . . . would constitute a manifest injustice, and . . . that the sentence imposed was [not] clearly excessive". RCW 13.40-.230. We therefore uphold the finding of manifest injustice and the sentence imposed pursuant to it, the time served by Bryan prior to this opinion to be credited to the 48 weeks to be served under the manifest injustice disposition.

We do not reach the trial court's holding that the provisions of RCW 13.40.230 governing appeal of manifest injustice findings are unconstitutional because they impose invalid time limits on the appeal process. The time issue need not be decided to dispose of this case; neither of the parties has claimed that the time limits impair their rights in this matter and the substantive grounds for review of the manifest injustice ruling have not been challenged. Resolution of this issue must await a case in which it is material.

The decision that sections of the Juvenile Justice Act of 1977 are unconstitutional and sentencing guidelines promulgated pursuant to it are invalid should be reversed. The trial court's finding of manifest injustice is instead adopted, and the commitment of Bryan to the Division of Institutions under that finding should be held the proper disposition of this case.

It is so ordered.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

ROSELLINI, J. (concurring in the result)—I concur in the result. However, I have some doubts of whether there is a rational relationship between the objectives of the Juvenile Justice Act of 1977 and the sentencing guidelines. It seems

to me that the guidelines for sentencing defeat the purpose of the act.