[No. 47613-6. En Banc. May 13, 1982.]

FRANKLIN COUNTY SHERIFF'S OFFICE, *Petitioner*, v. BETTY P. SELLERS, ET AL, *Respondents*.

318

C. J. Rabideau, Prosecuting Attorney, and George E. Heidlebaugh, Deputy, for petitioner.

Kenneth O. Eikenberry, Attorney General, and Morton M. Tytler, Senior Assistant, for respondents.

Elizabeth A. Edmonds and Nancy Preg on behalf of Washington Women Lawyers and Washington Chapter of National Organization for Women, amici curiae for respondents.

DIMMICK, J.—This is a review of a contested case conducted by a hearing tribunal of the Washington State Human Rights Commission (Commission). The tribunal awarded damages and other equitable relief to Betty Sellers on a sex discrimination claim brought against the Franklin County Sheriff's Office (County).

The trial court affirmed the findings, conclusions, and damages awarded by the tribunal. The Court of Appeals reversed in a 2-to-1 decision. This court granted both Sellers' and Franklin County's petitions for review. We reverse the Court of Appeals and uphold the trial court's affir-

mance of the hearing tribunal.

The facts, as determined from the record before us, are as follows:

In 1972, Franklin County formalized a work release program for county jail inmates. The draft called for a staff of a "Program Director and two counselors, a male and a female." County officials testified that in promulgating the regulations no thought was given to the fact that designating one counselor of each sex might be illegal employment discrimination.

In June 1974, Betty Sellers called the Franklin County Sheriff's Office to ask about the position for second counselor which she learned was open through the unemployment office. She was told by Shirley Billingsley, the woman who had been in the other counseling position for 4 years, that they would only consider a male counselor for the open position. Sellers filed a complaint with the Human Rights Commission.

The tribunal found that since Billingsley had for 4 years performed excellently as counselor in the program, the County had failed in its burden to prove that women as a class cannot perform the functions of a counselor in the work release program. The tribunal also found that the employment of a male counselor is not necessary for the successful implementation of the County's work release program, but is merely a preference or convenience.

The trial court's review was conducted on the record of the hearing tribunal and the trial court did not itself take evidence or try any issues of fact. The court upheld the tribunal on the basis that there was no error of law, the findings were not clearly erroneous and the formation and actions of the hearing tribunal were not in excess of constitutional or statutory authority. (*See* RCW 34.04.130(6).)

The Court of Appeals viewed the issues resolved by the tribunal as mixed questions of law and fact and determined that it should exercise its "inherent and statutory authority to make a de novo review of the record independent of the Commission's decision." *Franklin Cy. Sheriff's Office v.*

*Sellers,* 27 Wn. App. 797, 799, 621 P.2d 751 (1980). The majority then proceeded to reweigh the evidence, making findings of fact that differed from the findings of the tribunal. The dissent found still different facts.

I

This gives rise to the first issue in this case. What is the scope of review of administrative action in contested cases?

The review procedures set forth in the substantive act, Law Against Discrimination, RCW 49.60 remain substantially the same as when first enacted in 1949. Laws of 1949, ch. 183, § 9. The procedures provided by that act for the most part merely clarify the scope of review:

> The findings of the administrative law judge as to the facts, if supported by substantial and competent evidence shall be conclusive. The court, upon its own motion or upon motion of either of the parties to the proceeding, may permit each party to introduce such additional evidence as the court may believe necessary to a proper decision of the cause.
>
> The jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to a review by the supreme court or the court of appeals, on appeal, by either party, irrespective of the nature of the decree or judgment. Such appeal shall be taken and prosecuted in the same manner and form and with the same effect as is provided in other cases of appeal to the supreme court or the court of appeals, and the record so certified shall contain all that was before the lower court.

RCW 49.60.260(2), (3).

Those procedures, however, are not controlling. The administrative procedures act (APA), RCW 34.04.130(1), provides that a person aggrieved by a final decision in a contested case is "entitled to judicial review thereof only under [the APA] and such person may not use any other procedure . . . even though another procedure is provided elsewhere by a special statute or a statute of general application." This provision was adopted subsequent to the review procedures of RCW 49.60. Accordingly, it is clear

that the review procedures of the APA must be adhered to in the instant case. *Cf. Olson v. UW,* 89 Wn.2d 558, 573 P.2d 1308 (1978) (wherein this court held that the review procedures of a special statute adopted after the APA governed our review).

Our review, like that of the superior court and the Court of Appeals, is under RCW 34.04.130(6) which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
> (f) arbitrary or capricious.

■ Difficulties as to application and scope of the APA standards are apparent in the line of cases interpreting the above provisions.[1] But it is clear under the APA that review, whether conducted by the superior court, Court of Appeals, or Supreme Court, is limited to the record: "review shall be conducted by the court . . . and shall be confined to the record". RCW 34.04.130(5), with exceptions as set out. We have previously ruled that our review of

---

[1]This is discussed in an analysis and critique of the major cases up to 1978 in Abrahams, *Scope of Review of Administrative Action in Washington: A Proposal,* 14 Gonz. L. Rev. 75 (1978).

Professor Abrahams' critique is directed to the lack of consistency in this court's applications of the APA review standards, the problem being to figure out when the court will substitute its judgment for that of an administrative agency and when it will defer to the agency's expertise. In reviewing the case before us, we will attempt to clarify this law, but we note that issues as to scope of appellate review of administrative decisions do not readily lend themselves to unvarying rules and standards of great predictability in any jurisdiction, most notably in the federal system. For a discussion of the irreconcilable lines of federal cases exemplifying this fact, see K. Davis, *Administrative Law,* chs. 29–30 (3d ed. 1972).

administrative decisions is on the record of the administrative tribunal itself, not of the superior court. *Department of Ecology v. Ballard Elks Lodge 827,* 84 Wn.2d 551, 527 P.2d 1121 (1974); *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n,* 83 Wn.2d 446, 518 P.2d 1237 (1974).

## II
### ISSUES OF FACT UNDER THE APA

Judicial review is not selective, but must be conducted on the entire record, not by isolating evidence. *Norway Hill Preserv. & Protec. Ass'n v. King Cy. Coun.,* 87 Wn.2d 267, 552 P.2d 674 (1976). The duty of the reviewing court to search the entire record for evidence both supportive of and contrary to the agency's findings is found in *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 95 L. Ed. 456, 71 S. Ct. 456 (1951). RCW 34.04.130(6)(e) addresses the clearly erroneous standard of review for factual determinations "in view of the entire record".

■ As previously discussed, the APA's clearly erroneous standard of review for factual determinations governs. The APA amendment in 1967 did away with a substantial evidence test replacing it with the clearly erroneous test. This change clearly indicated that the Legislature intended to allow broader, more intensive review of an agency's factual determinations. *Ancheta v. Daly,* 77 Wn.2d 255, 259, 461 P.2d 531 (1969). *See also* Abrahams, *Scope of Review of Administrative Action in Washington: A Proposal,* 14 Gonz. L. Rev. 75, 80 (1978). The present test allows for greater judicial scrutiny of agency fact–finding as the reviewing court can declare a finding to be clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ancheta,* at 259–60.

■ In *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959), we ended our former practice of trying de novo questions of fact already determined by trial

courts. *Cf. Smith v. Skagit Cy.,* 75 Wn.2d 715, 453 P.2d 832 (1969) (wherein this court reviewed the record de novo because the trial court had not heard testimony requiring it to assess the credibility of witnesses, to weigh evidence, or reconcile conflicting evidence). Substitution of our judgment for that of the administrative agency in factual matters is not authorized by the APA and, by reasoning of *Hesperian Orchards,* we will not try facts de novo on review.

Although the Court of Appeals correctly points out that there was credible evidence contrary to the tribunal's findings, the findings are not "clearly erroneous" and should not have been tried de novo as was done by that court. *See Stempel v. Department of Water Resources,* 82 Wn.2d 109, 508 P.2d 166 (1973).

### III
### ISSUES OF LAW UNDER THE APA

■ Next, the issues of law are reviewed under the APA, RCW 34.04.130(6)(d). The Bona Fide Occupational Qualification (BFOQ) definition as determined by the tribunal is a question of law, to which we apply the error of law standard. Since issues of law are the responsibility of the judicial branch to resolve, the error of law standard allows the reviewing court to essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law. As we said in *Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 637 P.2d 652 (1981), at pages 554–55:

> Where an administrative agency is charged with administering a special field of law and endowed with quasi–judicial functions because of its expertise in that field, the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review. . . . We also recognize the countervailing principle that it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law. . . . [B]oth history and uncontradicted

authority make clear that it is emphatically the province and duty of the judicial branch to say what the law is.

(Citations omitted.)

Washington's Law Against Discrimination provides for a BFOQ exemption in RCW 49.60.180:

> It is an unfair practice for any employer:
> (1) To refuse to hire any person because of such person's . . . sex . . . *unless based upon a bona fide occupational qualification* [BFOQ].

(Italics ours.) The act does not define BFOQ; however, the Human Rights Commission in WAC 162–16–020(2) defines the BFOQ exemption:

> (a) Where a person's . . . sex . . . will be *essential to, or will contribute to,* the accomplishment of the purposes for which the person is hired.

(Italics ours.)

By comparison, Title 7 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(e)(1) (1976) provides:

> [I]t shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of . . . sex . . . in those certain instances where . . . sex . . . is a *bona fide occupational qualification reasonably necessary to the normal operation* of that particular business or enterprise . . .

(Italics ours.)

■■ The latter has been interpreted very narrowly in the federal courts to require an employer to establish that all or substantially all persons in the excluded class would be unable to efficiently perform the duties, *Weeks v. Southern Bell Tel. & Tel. Co.,* 408 F.2d 228, 235 (5th Cir. 1969), and the essence of the operation would be undermined by hiring anyone in that excluded class. *Diaz v. Pan Am. World Airways, Inc.,* 442 F.2d 385, 388 (5th Cir.), *cert. denied,* 404 U.S. 950, 30 L. Ed. 2d 267, 92 S. Ct. 275 (1971). *Diaz* states that mere preference cannot itself justify discriminatory practices in employment, it must rise to the level of a business necessity. *See also Dothard v. Rawlinson,* 433 U.S. 321, 53 L. Ed. 2d 786, 97 S. Ct. 2720 (1977).

The hearing tribunal relied upon these federal cases in its determination that no BFOQ existed under Washington's Law Against Discrimination, RCW 49.60. We hold that such reliance was proper. The County asserts that the hearing tribunal erred in using these cases to interpret RCW 49.60 because WAC 162–16–020(2)(a) is written in the alternative, "essential to, or will contribute to". This language is far broader than that permitted under the federal definition of a BFOQ. We conclude that a literal interpretation of the regulation would frustrate the purposes of RCW 49.60. The legislature has directed that the law's provisions be liberally construed in order to accomplish its purposes. RCW 49.60.020.

We recognize that in promulgating WAC 162–16–020(2)(a) the Commission did not intend to impede the purposes of the Law Against Discrimination. In fact other provisions within the same chapter of the administrative code indicate that the Commission intended a narrower standard comparable to Title 7. WAC 162–16–020(2) provides:

> The term "bona fide occupational qualification" has not been defined by the legislature. Its meaning must be worked out through experience in administering the law and with *reference to the general purposes of the law against discrimination and other expressions of public policy.*

(Italics ours.) The Commission has expressed a public policy in WAC 162–16–130:

> Bona fide occupational qualification. The Commission believes that the BFOQ should be applied narrowly to jobs for which a particular quality of sex, race, age, etc. . . ., is essential to the accomplishment of the purposes of the job.
>
> Where it is necessary for the purpose of authenticity or genuineness (e.g., model, actor, actress) or maintaining conventional standards of sexual privacy (e.g., lockerroom attendant, intimate apparel fitter), the Commission will consider sex to be a BFOQ. Any other type of BFOQ should be very carefully considered. To be safe, the employer should request a BFOQ ruling from the

Washington State Human Rights Commission and cite the ruling in the employment advertisement.

Anytime that an employment advertisement or notice expresses a preference, limitation, or discrimination based on sex, marital status, race, color, creed, age, national origin, or the presence of any physical, sensory, or mental handicaps, the burden shall be on the employer to prove that the expression is justified by a BFOQ. In the absence of proof, the advertisement will be considered an unfair practice under the law. (For further guidance on the meaning of BFOQ, see WAC 162–16–020.)

In addition, WAC 162–30–010 provides:

In the interest of consistency and to avoid confusion on the part of persons governed by both the state and federal sex discrimination laws, the commission will generally follow interpretations of the sex discrimination provisions of Title VII of the United States Civil Rights Act of 1964, 42 USC § 2000e and following, where the federal act is comparable to the state act.

Accordingly, because a literal interpretation of WAC 162–16–020(2) would frustrate the purposes of our law and other regulations indicate the comparable nature of a BFOQ under RCW 49.60 and Title 7 the hearing tribunal was correct in using *Weeks* and *Diaz* to interpret its regulation. The Court of Appeals, however, held that *Weeks* and *Diaz* were factually distinguishable and could not be relied upon because they involved restrictions limiting a job category to one sex or another exclusively whereas the instant case involves an attempt to achieve a female–male balance. We conclude for the following reasons that the factual distinctions are not relevant herein.

RCW 49.60.180(1) prohibits an employer from "refus[ing] to hire any person because of such person's . . . sex . . . unless based upon a bona fide occupational qualification . . ." The County's decision to achieve a sexual balance by providing a male counselor and female counselor resulted in the County refusing to hire Sellers because of her sex. As such, the action was prohibited by the statute unless it was based upon a bona fide occupational qualifi-

cation. We conclude that a decision to sexually balance the work force is subject to the BFOQ analysis of *Weeks* and *Diaz*. Accordingly, the inquiry is (1) under *Weeks,* whether all or substantially all 2–women counseling teams would be unable to perform their required function; or (2) under *Diaz,* whether the essential function of the program would be undermined if 2–women teams were utilized.[2]

In sum, we conclude that the hearing tribunal applied the correct standard in determining that a BFOQ did not exist.

## IV
### MIXED ISSUES OF LAW AND FACT UNDER THE APA

■ Since we conclude that the tribunal applied the correct law to facts which were not clearly erroneous, there is no issue as to mixed questions of law and fact. However, an additional discussion relating to the proper scope of review of mixed issues of law and fact is necessary in light of the course taken by the Court of Appeals. The Court of Appeals characterized the case as one involving mixed questions of law and fact and proceeded to try the facts de novo in its application of the law.

■ A reviewing court is not able to review facts de novo on mixed questions of law and fact, though language in previous opinions led the Court of Appeals to mistakenly do so in this case. By mixed questions of law and fact we are really referring not to the facts themselves, nor the law governing the situation, but to the law as applied to those facts. "[E]quating the law application process with the fact identification process, as many courts do, can lead only to distorted analysis." Abrahams, at 77, citing L. Jaffe, *Judicial Control of Administrative Action* 546–48 (1965).

Mixed questions of law and fact, or law application

---

[2]Because we affirm the hearing tribunal's ruling that the County's actions in attempting to sexually balance its staff violates RCW 49.60, we need not reach the question of whether its actions violated the state Equal Rights Amendment or equal protection. *Cf. Marchioro v. Chaney,* 90 Wn.2d 298, 582 P.2d 487 (1978) (wherein we dealt with the constitutional claims).

issues, involve the process of comparing, or bringing together, the correct law and the correct facts, with a view to determining the legal consequences. As we said in *Daily Herald Co. v. Department of Empl. Sec.*, 91 Wn.2d 559, 561, 588 P.2d 1157 (1979), mixed questions of law and fact exist "where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term". We have invoked our inherent power to review de novo those issues. *See Daily Herald; Department of Rev. v. Boeing Co.*, 85 Wn.2d 663, 538 P.2d 505 (1975); *Weyerhaeuser Co. v. Department of Rev.*, 16 Wn. App. 112, 553 P.2d 1349 (1976).

De novo review in these cases refers to the inherent authority of this court to determine the correct law, independently of the agency's decision, and apply it to the facts as found by the agency and upheld on review by this court. In *Daily Herald* we determined, then applied, the correct law to essentially undisputed facts. What we reviewed "de novo" was the meaning of the statute and how it applied to facts as determined by the trier of fact; we did not engage in reweighing evidence of credibility and demeanor.

In this case, the Court of Appeals was presented with evidence sharply in conflict, in the form of expert testimony, and the majority determined the weight of the evidence contrary to that of the fact finder. The dissent weighed the evidence again, coming to still another conclusion. We hold that it is not the province of the reviewing court to try the facts de novo when presented with mixed questions of law and fact, whether on appeal from a judgment of the superior court, administrative tribunal, or administrative judge. *See Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 441 P.2d 128 (1968).

## V
### County's Appeal

The County contends that the formation and actions of the tribunal violated constitutional and statutory provisions. The trial court concluded that no such violations

existed. The majority of the Court of Appeals did not address the issues. We affirm the trial court.

■■■ The County argues that the separation of powers doctrine has been violated because this case involves a dispute between individuals which should be decided by a court rather than an administrative agency. This argument is without merit. We have clearly decided that legislatively created agencies may constitutionally act in a quasi–judicial capacity. *Asarco Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 696, 601 P.2d 501 (1979). In addition, the delegation of adjudicative powers to the Human Rights Commission was expressly upheld in *Rody v. Hollis,* 81 Wn.2d 88, 500 P.2d 97 (1972).

■■■ The County also contends that the procedures followed by the Commission, *i.e.,* the Human Rights Commission investigates the claim and also appoints a tribunal to adjudicate the claim, violates due process. RCW 49.60 and the Commission's rules contained in WAC 162–04 and 162–08 establish a tribunal composed of persons who had no part in the earlier stages of the case. We have previously upheld the legality of these procedures in *Rody.*[3]

The County's primary contention appears to be that it was denied a fair hearing. In this regard it argues that the interrelationship between WAC 162–08–278(7), concerning the law the tribunal shall apply, and WAC 162–08–211(6), concerning the law each tribunal member agrees to apply, causes the tribunal members to be committed only to the Commission and its view of the law therefore denying parties like itself a fair trial.

WAC 162–08–211(6) requires each tribunal member to

---

[3]We note that the 1981 Legislature has eliminated the provisions that form the basis of the County's objections. An administrative law judge appointed by the chief administrative law judge has been substituted for the hearing tribunal appointed by the chairperson of the Commission. Laws of 1981, ch. 259, § 2, amending RCW 49.60.250. Uniform procedure rules promulgated by the chief administrative law judge will supersede Human Rights Commission regulations governing hearing procedures. Laws of 1981, ch. 67, §§ 8, 13, 14. These statutes will become fully effective on July 1, 1982. Laws of 1981, ch. 259, § 7; Laws of 1981, ch. 67, § 40.

execute an "Acceptance of Appointment" form, stating:

> "I accept appointment as a member of the hearing tribunal which will hear the case captioned above for the Washington State Human Rights Commission.
>
> I certify that, to my knowledge, I have no conflicts of interest which would interfere with my ability to judge fairly and impartially.
>
> I promise to judge this case with fairness and impartiality to all parties and persons.
>
> I agree with the purposes of the law against discrimination and I will follow and apply the law against discrimination and the regulations, declaratory rulings, and other formal interpretations of the law against discrimination made by vote of the commissioners.
>
> I am willing to devote the time necessary to fully hear the case and decide it with reasonable promptness.
>
> Dated _____
>
> _____
> (Signature)"

▪ The County implies that this agreement limits the tribunal's consideration of relevant law. As illustrated by the written opinion of the hearing tribunal in the instant case, citing numerous federal decisions, no such limitation exists. The above agreement includes a promise to apply Commission regulations. These regulations include WAC 162–08–278(7):

> In determining whether unfair practices have been committed, the hearing tribunal shall apply the law as it is written in chapter 49.60 RCW and as it has been interpreted by final decisions of appellate courts and by the Washington State Human Rights Commission in regulations, declaratory rulings, and other formal interpretations made by vote of the commissioners. Court decisions interpreting statutes other than chapter 49.60 RCW, rulings of other hearing tribunals, interpretations of law by the commission's staff or legal counsel, and arguments of legal counsel for the commission or other parties shall be given whatever persuasive weight they possess, in the judgment of the tribunal.

The County also implies that WAC 162–08–211(6) allows the tribunal to ignore constitutional guaranties. As previ-

ously addressed, due process rights are emphasized and ensured by the Commission procedures. The failure to include a declaration of support for federal and state constitutions, as apparently sought by the County, does not violate the guaranty of a fair hearing, especially since the tribunal, as an administrative agency, has no authority to determine the constitutionality of the law it administers. *Bare v. Gorton,* 84 Wn.2d 380, 526 P.2d 379 (1974).

The guaranty of a fair hearing does not prohibit partiality toward an issue of law or a policy. "A prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification." 3 K. Davis, *Administrative Law* § 19:1, at 371 (2d ed. 1980). In explaining his reason for not disqualifying himself from a specific case based upon his prior position on a similar issue while he worked for the Department of Justice, Justice Rehnquist stated in *Laird v. Tatum,* 409 U.S. 824, 834–35, 34 L. Ed. 2d 50, 93 S. Ct. 7 (1972):

> MR. JUSTICE DOUGLAS' statement about federal district judges in his dissenting opinion in *Chandler* v. *Judicial Council,* 398 U. S. 74, 137 [26 L. Ed. 2d 100, 90 S. Ct. 1648] (1970), strikes me as being equally true of the Justices of this Court:
>
> > "Judges are not fungible; they cover the constitutional spectrum; and a particular judge's emphasis may make a world of difference when it comes to rulings on evidence, the temper of the courtroom, the tolerance for the proffered defense, and the like. Lawyers recognize this when they talk about 'shopping' for a judge; Senators recognize this when they are asked to give their 'advice and consent' to judicial appointments; laymen recognize this when they appraise the quality and image of the judiciary in their own community."
>
> Since most Justices come to this bench no earlier than their middle years, it would be unusual if they had not by that time formulated at least some tentative notions that would influence them in their interpretation of the sweeping clauses of the Constitution and their interaction with one another. It would be not merely unusual, but extraordinary, if they had not at least given opinions

as to constitutional issues in their previous legal careers. Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.

Similarly, in this case, a willingness to apply the Law Against Discrimination, and a promise to be fair and impartial to all parties and persons did not violate the County's right to a fair hearing. *See also Skold v. Johnson,* 29 Wn. App. 541, 630 P.2d 456 (1981).

 Another assertion made by the County is that Sellers' claim is fatally deficient in that she did not make formal application for the job. We disagree. It is hornbook law that the law does not require a useless act. The evidence is not disputed that Sellers called and was told that only men were being considered for the job. The Sheriff himself confirmed this by letter to the Human Rights Commission shortly thereafter. The Sheriff testified that although he preferred a man he might have hired Sellers if no equally qualified man was available. At the time of the incident at issue, Sellers had a bachelor's degree in sociology and psychology and was close to completing a master's program in guidance and counseling. She had many years of teaching and counseling experience, including work with migrant workers in the Pasco area and some teaching experience with work release inmates. In fact, the Sheriff testified that he had not expected to attract anyone of Sellers' qualifications to apply for the position.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) sets out the four requirements of a prima facie case of discrimination: (1) plaintiff is a member of a suspect, or protected class, (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) that despite plaintiff's qualifications s/he was rejected, (4) that after rejecting plaintiff, the job remained open and the employer continued to seek applicants with plaintiff's same basic qualifications.

As stated in WAC 162-30-010, the state law on discrimi-

nation will be interpreted by reference to the federal law when not in conflict. *See Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320 (1976); *Fahn v. Cowlitz Cy.,* 93 Wn.2d 368, 610 P.2d 857 (1980); *Rose v. Hanna Mining Co.,* 94 Wn.2d 307, 616 P.2d 1229 (1980). Although we accept *McDonnell Douglas* as good law, technical compliance with element (2) would defeat the purpose of RCW 49.60, which is to be liberally construed to effectuate its purpose to prohibit unlawful discrimination. "[W]here an employer's acts deter [plaintiff] from applying, strict adherence to the 'application' requirement is not mandated." *Iowa Civil Rights Comm'n v. Woodbury Cy. Comm'ty Action Agency,* 304 N.W.2d 443, 451 (Iowa Ct. App. 1981), citing *State Comm'n for Human Rights v. Yellow Cab,* 611 P.2d 487, at 491 (Alaska 1980). *See also Arnett v. Seattle Gen. Hosp.,* 65 Wn.2d 22, 395 P.2d 503 (1964).

We reverse the Court of Appeals and uphold the trial court's affirmance of the findings, conclusions and damages awarded by the tribunal.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, and DORE, JJ., concur.

Reconsideration denied June 29, 1982.