[No. 7743–8–III.   Division Three.   March 17, 1987.]

LEO E. MURPHY, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*Dean K. Knapton* and *Erickson & Erickson,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for respondent.

MUNSON, J.—Leo E. Murphy appeals the Superior Court affirmance of the Department of Employment Security denying his unemployment benefits. Mr. Murphy challenges the Commissioner's conclusion that he did not demonstrate "good cause" for leaving his employment. We reverse.

Mr. Murphy, age 50, worked for Kaiser Aluminum & Chemical Corporation for 17 years as a brickmason. On January 25, 1985, Kaiser informed him that due to a cutback in employees, his services as a brickmason were not needed. Kaiser offered him a position in the pot room with a 5 percent reduction in salary. He voluntarily quit his job refusing to accept the position in the pot room.

As a brickmason, Mr. Murphy spent much of his time maintaining the furnaces and occasionally running a jackhammer. The work was strenuous at times, but did not involve much lifting; the temperature in the working area was sometimes 100 degrees F. Although he would have been transferred to the pot room as a laborer, it is likely he would have spent more than half his day working as a carbon setter, standing on a narrow catwalk 6 to 12 inches above vats of molten steel at 1,100 degrees F. to 1,300 degrees F., breaking the crust on the metal with a heavy crowbar. A carbon setter typically wears a cape, chaps, mask, and long underwear to protect himself from the heat and gases escaping from the molten metal.

Mr. Murphy said he would not work in the pot room because of the extreme heat and gases. Because the work was so strenuous, he described it as a "young man's" job. The job is generally a stepping point; when a carbon setter gets some seniority, he transfers to a job that is less physically demanding. Kaiser claimed Mr. Murphy had no phys-

ical restrictions on his medical chart and felt he could adapt to the strenuous work.

The Job Service Center granted Mr. Murphy unemployment compensation; Kaiser appealed; the Officer of Administrative Hearings (OAH), after taking testimony and reviewing exhibits, made the following determination:

4. In the present case, claimant left his job instead of transferring to the pot room at a five percent reduction in salary. The five percent reduction in salary, although important, would not constitute by itself a substantial deterioration of the work factor. We now turn to the change in job duties from mason to carbon setter. Although claimant's job as a mason was certainly not easy, the job was much less intense in terms of strenuous work and extreme heat. We note that very few of the workers in the pot room are fifty years of age or older. The work in the pot room is extremely demanding and performed under adverse conditions. Although claimant might have been able to perform the work, we find that the reduction in salary coupled with the change to a more strenuous, harder, and less desirable position to be a substantial involuntary deterioration of the work factor. Claimant has established good cause for quitting his job pursuant to RCW 50.20.050(1). We concur with the Job Service Center determination.

Kaiser appealed to the Commissioner of the Department. The Commissioner, after reviewing the record, set aside the decision of the OAH, adopting the findings of fact and conclusions of law, except for conclusion 4 (above), stating:

Pursuant to the statute and regulations cited at Conclusion 1, a claimant, to show good cause for quitting work, must establish that he or she quit work due to a compelling work factor after having made a reasonable effort to preserve his or her employment. It has not been demonstrated in the present case that work in the pot room would adversely affect claimant's health or safety within the contemplation of RCW 50.20.050(3). Absent such a showing, it cannot be concluded that he had a compelling reason for quitting that work.

The Superior Court affirmed the Commissioner's decision. Mr. Murphy repaid the $2,220 received as unemploy-

ment compensation; he has found mason work since leaving Kaiser. Mr. Murphy appeals.

The sole issue is whether the Commissioner of the Department erred in concluding Mr. Murphy voluntarily left his employment without good cause. The scope of this court's review is governed by RCW 34.04.130(6) which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> . . .
>
> (d) affected by other error of law; or
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
> (f) arbitrary or capricious.

Which standard to apply depends on whether the issue is one of fact, law, or a mixed question of law and fact. *Rasmussen v. Department of Empl. Sec.*, 98 Wn.2d 846, 849–50, 658 P.2d 1240 (1983); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324–30, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). A factual issue is reviewable under the "clearly erroneous" standard. *Franklin Cy. Sheriff's Office,* at 324–25. The error of law standard is applied whenever a question of law or a mixed question of law and fact is presented. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 440–41, 680 P.2d 40 (1984).

When the dispute involves inferences drawn from raw facts and an interpretation of the term "good cause," the error of law standard applies. *Grier v. Department of Empl. Sec.,* 43 Wn. App. 92, 95, 715 P.2d 534, *review denied,* 106 Wn.2d 1003 (1986). Although Washington courts accord substantial weight to an administrative agency's construction of statutory language, they also recognize the countervailing principle that it is ultimately for the court to determine the purpose and meaning of statutes

even when contrary to that of the agency. *Franklin Cy. Sheriff's Office*, at 325–26; *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981).

Here, the Commissioner found Mr. Murphy had not established good cause because he had not demonstrated that work in the pot room would adversely affect his health or safety within the contemplation of RCW 50.20.050(3), the pertinent portion of which provides:

> In determining under this section whether an individual has left work voluntarily without good cause, the commissioner shall only consider work–connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies.

Apparently the Commissioner reads the statute to require a claimant to demonstrate that the work must adversely affect his or her health or safety. We disagree. The statute merely limits the Commissioner's consideration to work–connected factors *such as* the risk to the claimant's health and safety. Having determined the Commissioner erred in applying RCW 50.20.050 to these facts, this court may make a de novo review of the record to determine if Mr. Murphy has established "good cause" for leaving his employment. *See Grier*, at 95.

The purpose of the Employment Security Act is to combat involuntary unemployment by providing benefits for "persons unemployed through no fault of their own". RCW 50.01.010. To establish good cause for becoming voluntarily unemployed, a claimant must demonstrate (1) he or she left work primarily because of a work–connected factor of such a compelling nature that a reasonably prudent person would have left his or her employment, and (2) he or she first exhausted all reasonable alternatives prior to termination. *Johns v. Department of Empl. Sec.*, 38 Wn. App. 566, 569, 686 P.2d 517 (1984); WAC 192–16–009(1).

RCW 50.20.050(3) further provides:

> Good cause shall not be established for voluntarily leaving work because . . . of any other significant work factor which was generally known and present at the time he or she accepted employment, unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that other related circumstances would work an unreasonable hardship on the individual were he or she required to continue in the employment.

The Department contends a reasonably prudent person in Mr. Murphy's circumstances would not quit simply because the work was strenuous and normally performed by younger workers. The Department argues Mr. Murphy should have at least tried the carbon setter job.

Whether a work–connected factor of such a compelling nature would cause a reasonably prudent person to leave his or her employment exists is determined by the particular facts in each case.

> It is undoubtedly true that an employee might be justified in voluntarily terminating his employment, if called upon to work for substantially reduced wages or under less favorable conditions; but each phase would be a matter of degree, and the circumstances surrounding each case should certainly be considered by any authority called upon to determine whether or not the employee had good cause to leave his employment.
>
> An employee might well be justified in terminating his employment, if transferred from available work to work of a substantially different nature, or even of the same nature but paying a lower wage or requiring work under less favorable conditions.
>
> On the other hand, a different situation would be presented if the employer no longer had occasion to use the employee in the work he had formerly performed, either permanently or temporarily, but could continue the employment in some lesser but related capacity.

*In re Anderson*, 39 Wn.2d 356, 361–62, 235 P.2d 303 (1951) (a 20 percent per hour reduction in pay and a loss of opportunity to be placed on another shift at a 10 cents per

hour increase is not sufficient to establish good cause for voluntary unemployment). *See also Sweitzer v. Department of Empl. Sec.,* 43 Wn. App. 511, 718 P.2d 3 (1986) (sexual harassment is good cause for leaving employment); *Grier v. Department of Empl. Sec., supra* (a 33 percent reduction in pay is a compelling reason for terminating one's employment); *Johns v. Department of Empl. Sec., supra* (philosophical differences with supervisors, lack of communication, and dissatisfaction with responsibilities and salary are not sufficient to compel a reasonably prudent person to leave his or her employment); *Hussa v. Department of Empl. Sec.,* 34 Wn. App. 857, 664 P.2d 1286, 40 A.L.R.4th 296 (1983) (sexual harassment is good cause for leaving employment); *Cowles Pub'g Co. v. Department of Empl. Sec.,* 15 Wn. App. 590, 550 P.2d 712 (1976) (personal dissatisfaction with low wages and lack of promotional opportunity is not good cause for leaving employment), *review denied,* 88 Wn.2d 1001 (1977).

The act does not require a claimant, whose particular services are no longer required by the employer, to accept whatever position the employer offers. Several cases in other jurisdictions have held that a bricklayer may refuse a position as a laborer and remain eligible for unemployment compensation. In *United States Steel Corp. v. Unemployment Compensation Bd. of Review,* 10 Pa. Commw. 295, 310 A.2d 94 (1973), a bricklayer, who had been laid off due to lack of work, declined the employer's offer for work as a laborer. The court affirmed the board's finding the position as a laborer was not "suitable work" because (1) although the claimant first worked as a laborer for approximately 2 years, he completed a bricklayer apprenticeship program which required a minimum of 4 years to complete; (2) as a laborer he would use none of these skills; and (3) he had only 1 week to seek work as a bricklayer. In *Green v. Republic Steel Corp.,* 44 A.D.2d 345, 355 N.Y.S.2d 192 (1974), a bricklayer, who had been laid off due to lack of work, was offered a position by his employer as a laborer. The court affirmed the agency's finding of good cause for

the claimant's refusal to accept the position as a laborer because (1) the claimant had always worked as a bricklayer and never as a laborer, (2) a laborer's duties entail substantially less skill and discretion than those of a bricklayer, and (3) the claimant would suffer a 15 percent reduction in pay.

Here, Mr. Murphy had several reasons for declining to accept the position as a carbon setter: (1) he had worked 17 years at Kaiser as a brickmason and was asked to accept a position as an unskilled laborer; (2) the new job was to be performed in extreme heat: a carbon setter stands on a catwalk between 6 and 12 inches above vats of molten steel at 1,100 degrees F. to 1,300 degrees F., wearing a cape, chaps, mask, and long underwear to protect himself from the heat and escaping gases; (3) the new job was extremely strenuous—a great deal of the work is done with a heavy crowbar; (4) very few of the carbon setters are 50 years old; (5) Mr. Murphy would suffer a 5 percent reduction in pay; and (6) Mr. Murphy was required to accept the new position immediately.

Although we consider the above factors as a whole, we find the nature of the alternative position offered to Mr. Murphy particularly significant. The change to a more strenuous and less desirable position as an unskilled laborer is a work–connected factor of such a compelling nature as to cause a reasonably prudent 50–year–old person to leave his or her employment. This constitutes a substantial involuntary deterioration of the work factor.

The Department contends Mr. Murphy should be denied benefits because he refused to try the job as carbon setter; thus, he failed to exhaust all reasonable alternatives prior to leaving his employment. He is not required to try just any position offered by his employer. He was given a choice—carbon setter or nothing. Because of the nature of the newly offered position, Mr. Murphy did not act unreasonably and, therefore, did not fail to exhaust all reasonable alternatives.

The judgment of the Superior Court is reversed. Mr.

Murphy is entitled to attorney fees in the amount of $1,326 and costs in the amount of $201.29. RCW 50.32.160.

McINTURFF, C.J., and THOMPSON, J., concur.