[No. 12469-6-II.   Division Two.   May 15, 1991.]

JOHN C. KELLUM, *Appellant*, v. THE DEPARTMENT OF RETIREMENT SYSTEMS, *Respondent*.

*Judith A. Lonnquist,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Jean M. Wilkinson, Assistant,* for respondent.

ALEXANDER, J.—John C. Kellum, a Bellevue police officer, appeals an order of the Thurston County Superior Court affirming a decision of the Department of Retirement Systems denying his claim for service credit for a 20–month period during which he was on an authorized leave of absence from the Bellevue Police Department while serving with the armed forces of the United States. Kellum asserts, specifically, that (1) the trial court erred in its interpretation of the applicable statute, RCW 41.44; and (2) denial of service credit to him, even if authorized by statute, amounts to a denial of equal protection of the law as guaranteed by the fifth and fourteenth amendments to the

United States Constitution. We reverse, concluding that the Department and the trial court erred in interpreting RCW 41.44.120(4).

The facts of this matter are not in dispute. Kellum first became employed as a police officer for the City of Bellevue on November 5, 1961. Approximately a year after Kellum obtained employment with Bellevue, the City became a participant in the Statewide City Employees' Retirement System (SCERS). The following year Kellum was drafted into the armed forces of the United States, where he served from October 1963 to July 1965. Kellum was accorded leave of absence status by Bellevue during the time he was in the service. In 1970, Kellum's retirement plan was transferred to the Washington Law Enforcement Officers, and Fire Fighters' Retirement System (LEOFF).

In 1986, Kellum petitioned the Department of Retirement Systems to be given "service credit" for the 20 months he served on active duty in the Armed Forces. The Department, relying on RCW 41.44.120(4), denied his request. It determined that the only military service for which service credit in the retirement system may be given is military service which prevents an employee from being in city service on the applicable "effective date."[1] Kellum appealed the Department's decision to the Thurston County Superior Court. The Superior Court affirmed the Department and he appeals to this court.

Under RCW 41.26.220, judicial review of any final decision of the Director of the Department of Retirement Systems is governed by RCW 34.04,[2] the administrative procedure act. It provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision

---

[1] "Effective date" is the (1) date on which any individual group of employees became a member of SCERS, or (2) date on which any city or town became a participant. RCW 41.44.030(26).

[2] RCW 34.04 has been superseded by RCW 34.05, effective in 1988. However, this case was litigated under the old APA.

if the substantial rights of the petitioners may have been prej-udiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

RCW 34.04.130(6). Appellate review of an administrative decision is made on the record of the administrative tribunal itself, not on that of the superior court. *Franklin Cy Sheriff's Office v. Sellers,* 97 Wn.2d 317, 323–24, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

Issues of law are reviewed de novo under the error of law standard. *Franklin County,* 97 Wn.2d at 325. This standard allows the reviewing court to essentially substitute its judgment for that of the administrative body on legal issues. *Franklin County,* 97 Wn.2d at 325. Substantial weight is, however, given to the agency's view of the law. *Franklin County,* 97 Wn.2d at 325.

Under LEOFF as originally enacted, an employee could receive credit for military service if the employee was a member of LEOFF at the time he or she entered the military. RCW 41.26.190. In 1971, the definition of "service" under LEOFF was amended to include the following:

[F]or members retiring after May 21, 1971 who were employed under the coverage of a prior pension act before March 1, 1970, "service" shall include (i) such military service not exceeding five years as was creditable to the member as of March 1, 1970, under the member's particular prior pension act . . . .. However, in no event shall credit be allowed for any service rendered prior to March 1, 1970, where the member at the time of rendition of such service was employed in a position covered by a prior pension act, unless such service, at the time credit is claimed therefor, is also creditable under the provisions of such prior act . . . ..

RCW 41.26.030(14)(a).

Therefore, the inquiry is whether Kellum's period of military service was "creditable" under SCERS, his prior pension act. Under SCERS, "service" and "prior service" are defined as follows:

"Service" means service rendered to a city for compensation; and for the purpose of this chapter a member shall be considered as being in service only while he is receiving compensation from the city for such service *or is on leave granted for service in the armed forces of the United States as contemplated in RCW 41.44.120.*

"Prior service" means the service of a member for compensation rendered a city prior to the effective date *and shall include service in the armed forces of the United States to the extent specified herein* and service specified in RCW 41.44-.120(5).

(Italics ours.) RCW 41.44.030(7), (8).

Kellum's military service took place after the effective date of the City's participation in SCERS. Therefore, only the "service" definition is applicable. For his leave of absence to be included as "service", it must be "contemplated in RCW 41.44.120." The only subsection of RCW 41.44.120 that mentions service in the Armed Forces is RCW 41.44.120(4):

If sickness, injury, or service in the armed forces of the United States during the national emergency identified with World War I or World War II and/or service in the armed forces of the United States of America for extended active duty by any employee who shall have been regularly granted a leave of absence from the city service by reason thereof, prevents any regular employee from being in service on the effective date, the board shall grant prior service credit to such person when he is again employed. The legislative authority in each participating city shall specify the amount of prior service to be granted or current service credit to be made available to such employees: . . .. Prior or current service rates . . . shall not exceed the rates established for fellow employees.

The Department read RCW 41.44.120(4) to apply only to employees who were on a leave of absence for service in the Armed Forces, and thus prevented from being in service, "on the effective date" of their City's participation in SCERS. Kellum was in service on the effective date of Bellevue's participation in SCERS, so RCW 41.44.120(4)

does not directly apply. Yet, RCW 41.44.030(7) mandates that the period of service in the Armed Forces must be "as contemplated in RCW 41.44.120." In order to determine what was to be "contemplated", the original enactment of SCERS, and its subsequent amendments, must be examined.

SCERS was enacted in chapter 71 of the 1947 Laws of Washington. Section 3 defined "service" and "prior service" as follows:

(7) "Service" shall mean service rendered to a city for compensation; and for the purpose of this act a member shall be considered as being in service only while he is receiving compensation from the city for such service *or is on leave granted for service in the armed forces of the United States as contemplated in section 12 hereof.*

(8) "Prior service" shall mean the service of a member for compensation rendered a city prior to the effective date *and shall include service in the armed forces of the United States to the extent specified herein.*

(Italics ours.)

Section 12 defined "prior service credit" and discussed service in the Armed Forces in subsection (d), as follows:

If sickness, injury, or service in the armed forces of the United States during the national emergency identified with the First World War and/or the Second World War, prevents any regular employee from being in service on the effective date, the board shall grant prior service credit to such person when he is again employed. The legislative authority in each participating city shall specify the amount of prior service to be granted or current service credit to be made available to such employees: . . . Prior and/or current service rates for such employees shall not exceed the rates established for fellow employees.

As originally enacted, SCERS recognized that some city employees would be prevented from being in service on the applicable effective date by reason of their military service. It sought to address this situation in section 12, which granted prior service credits to such employees. However, "prior service" was limited to service in the Armed Forces occurring before the effective date. It appears that the Legislature recognized this, and included the references to

"current service credit to be made available" and to "current service rates" with the intent that time spent in the Armed Forces after the effective date would be treated as part of the employee's "service" under section 3. Therefore, it is apparent that the Legislature's intent, when it enacted SCERS, was to give credit for all time spent in service with the Armed Forces, with the time before the effective date being treated as "prior service" and the time after the effective date being treated as "service".

The definitions of "service" and "prior service" are unchanged from the 1947 act, except for technical amendments and an addition to "prior service" to include prior employees of certain private companies and associations. The definition of "prior service credits" having reference to service in the Armed Forces was amended in 1951, and added the following language after "the Second World War" and before "prevents . . .":

> and/or service in the armed forces of the United States of America for extended active duty by any employee who shall have been regularly granted a leave of absence from the city service by reason thereof

Laws of 1951, ch. 275, § 8. *See also* House Journal, 31st Legislature (1950), at 1001–02. Other than technical amendments and a further inclusion of prior employees of certain private companies and associations, as noted above, the statute is unchanged since the 1951 amendment.

As originally enacted, the statutes for granting credit for military service were unambiguous because there were no employees who entered into military service after the effective date of SCERS in each participating city. However, after the 1951 amendment to include military service while on a leave of absence, the statutes became ambiguous as to those city employees who were in service before or on the effective date of their City's participation in SCERS.

▆▆ Where there is ambiguity regarding the application of pension statutes, the statutes are to be construed in favor of the persons for whose benefit they were intended. *Bowen v. Statewide City Employees Retirement Sys.*, 72

Wn.2d 397, 402, 433 P.2d 150 (1967). In examining the Legislature's original intent in enacting SCERS, it appears that the Legislature intended to grant city employees full credit for their time spent in the Armed Forces, whether before the effective date, treated as "prior service", or after the effective date, treated as "service". None of the subsequent amendments have shown any legislative intent to modify this granting of full credit for military service. Accordingly, we interpret "as contemplated in RCW 41.44-.120" to mean granting full credit for military service, whether falling into the definition of "prior service" or of "service". Kellum's military service, having occurred after his employment and after the effective date, should have been included in calculating his amount of "service" and should have been considered "creditable" under the terms of the LEOFF statutes.

Having determined that the Department and the trial court erred in refusing to treat Kellum's military service as creditable service under LEOFF and SCERS, we need not address Kellum's argument that he was denied equal protection.

Reversed and remanded for recalculation of Kellum's service credit.

WORSWICK, C.J., and PETRICH, J., concur.