208 P.3d 549 (2009)
Geoffrey S. AMES, M.D., Petitioner,
v.
WASHINGTON STATE HEALTH DEPARTMENT MEDICAL QUALITY HEALTH ASSURANCE COMMISSION, Respondent.
No. 80644-6.
Supreme Court of Washington, En Banc.
Argued March 10, 2009.
Decided June 4, 2009.
William Robert Bishin, Law Offices of William R. Bishin PS, Seattle, WA, for Petitioner.
*550 S. Kim O'Neal, Tracy L. Bahm, Attorney General's Office, Olympia, WA, for Respondent.
Kenneth Scott Kagan, Carney Badley Spellman, Seattle, WA, Amicus Curiae on behalf of WA Citizens for Health Options Integrity & Clinical Excellance.
Michael K. McCormack, Attorney at Law, Maple Valley, WA, Amicus Curiae on behalf of Citizens for Health, American Association for Health Freedom and WA Choice.
OWENS, J.
¶ 1 Dr. Geoffrey Ames urges reversal of sanctions levied against him by the Washington State Health Department's Medical Quality Health Assurance Commission (MQAC) for violations of the medical professional misconduct statute, RCW 18.130.180. MQAC concluded after a hearing that Ames had engaged in unprofessional conduct in violation of RCW 18.130.180(4) and had used an inefficacious device in contravention of RCW 18.130.180(16). Ames contends that no expert testified to the standard of care or that his device was inefficacious. Pet. for Review at 7-8. Ames now asks this court to hold that expert testimony regarding both elements was required and to reverse the lower court and remand to MQAC with instructions to dismiss and return Ames to the status quo ante. Suppl. Br. of Pet'r at 15, 19.
¶ 2 We affirm the Court of Appeals because expert testimony provided at Ames's disciplinary hearing constituted substantial evidence to support the decision of MQAC. The testimony of the maker of the device at issue, as well as an expert on such devices generally, offered on the record below was sufficient for the panel to find that Ames both fell below the standard of care and used an inefficacious device.

FACTS
¶ 3 The issues in this case arise out of Ames's treatment of Patient One (P1) for sluggishness and fatigue. Ames engaged in a purported holistic medical practice in Richland, Washington, combining traditional medical techniques with naturopathic and homeopathic medical techniques. During a visit, Ames discussed P1's symptoms and informed P1 that he may be suffering from allergies to eggs or mustard and that those allergies may be contributing to his symptoms. Ames proposed to use a device, the Life Information System Tens (LISTEN), to test and treat P1 for his egg allergy.
¶ 4 LISTEN is a biofeedback machine  specifically, a galvanic skin response[1] machine  that measures changes in resistance, modeled in part on previous biofeedback machines developed for relaxation exercises. LISTEN has not been approved by the Food and Drug Administration (FDA) for use in detecting and/or treating allergies, although biofeedback machines have been approved for other uses. Ames had not been specifically trained to use LISTEN by the manufacturer, and he testified that he did not know the "physics" of the unit but understood in theory how the device should work. Clerk's Papers (CP) at 17. Ames learned to use LISTEN from other doctors who also use the device.
¶ 5 During P1's visit, Ames used LISTEN to attempt diagnosis of allergies. Ames instructed P1 to lie on his back while holding a small brass probe in his hand. The probe connected to LISTEN. While P1 lay prone, Ames performed a basic muscle resistance test by asking P1 to resist downward pressure on his upraised forearm, which P1 ably achieved. Next, Ames typed the word "eggs" into LISTEN's computer interface and performed the resistance test again. CP at 20. Apparently, Ames was able to force P1's arm down. Finally, Ames placed a paper sheath over the sensor. When asked why he had done so by P1, Ames replied that he was able to replicate what the machine could do telepathically and that he could finish the treatment without the machine. CP at 21; Administrative Record (AR) at 2271-75(P1); see also AR at 2719-66 (similar testimony of Patient Three (P3)). At the conclusion of the visit, Ames instructed P1 to avoid eggs for 48 hours, else the treatment would not take.
*551 ¶ 6 After the visit, P1 complained to the Department of Health (Department) about Ames's method. P1 indicated that he was concerned about "Dr. Ames's views of mercury, lead poisoning, and chelation." Ames v. Dep't of Health, noted at 138 Wash.App. 1044, 2007 WL 1448758, at *2. "He also indicated concern with the doctor's obsession with alternative modalities." Id. Upon investigating P1's complaint, the Department filed a statement of charges against Ames. As a result of an administrative hearing on the matter, MQAC determined that Ames had committed acts of professional misconduct under RCW 18.130.180(4)[2] and 18.130.180(16).[3] MQAC sanctioned Ames by suspending his license, a suspension that would be stayed provided that Ames complied with the administrative order. In its order, MQAC barred Ames from using LISTEN and ordered him to pay a fine.
¶ 7 MQAC is comprised of several members, including doctors, physician assistants, and public members who have no medical training. For a hearing, MQAC selects three members to adjudicate the matter. In the case of Ames, the panel consisted of one doctor, one physician's assistant, and one public member.
¶ 8 Ames petitioned for judicial review in the Benton County Superior Court, which affirmed his sanction. CP at 31-35. In an unpublished opinion, Division Three of the Court of Appeals affirmed. Ames, 138 Wash. App. 1044, 2007 WL 1448758. We granted Ames's petition for review. Ames v. Dep't of Health, 163 Wash.2d 1059, 187 P.3d 753 (2008).

SCOPE AND STANDARD OF REVIEW
¶ 9 We apply the standards of the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, directly to the agency record in reviewing agency adjudicative proceedings. William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wash.App. 403, 407, 914 P.2d 750 (1996) (citing Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402-03, 858 P.2d 494 (1993)). Under the WAPA, a reviewing court may reverse an administrative order (1) if it is based on an error of law, (2) if it is unsupported by substantial evidence, (3) if it is arbitrary or capricious, (4) if it violates the constitution, (5) if it is beyond statutory authority, or (6) when the agency employs improper procedure. RCW 34.05.570(3)(d), (e), (h), (i), (a), (b), (c); Tapper, 122 Wash.2d at 402, 858 P.2d 494; Olmstead v. Dep't of Health, 61 Wash.App. 888, 891-92, 812 P.2d 527 (1991).
¶ 10 When reviewing an administrative agency decision, we review issues of law de novo. Kellum v. Dep't of Ret. Sys., 61 Wash.App. 288, 291, 810 P.2d 523 (1991) (citing Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325, 646 P.2d 113 (1982)); Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 728, 818 P.2d 1062 (1991). We can then substitute our judgment for that of the administrative body on legal issues. Kellum, 61 Wash.App. at 291, 810 P.2d 523; William Dickson Co., 81 Wash.App. at 407, 914 P.2d 750. However, we accord substantial weight to the agency's interpretation of the law it administers  especially when the issue falls within the agency's expertise. Haley, 117 Wash.2d at 728, 818 P.2d 1062 (citing St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wash.2d 690, 695, 801 P.2d 212 (1990)); US W. Commc'ns, Inc. v. Utils. & Transp. Comm'n, 86 Wash.App. 719, 728, 937 P.2d 1326 (1997).
¶ 11 With regard to issues of fact, this court reviews the evidence submitted to determine whether it constituted substantial evidence to support the factual findings of the agency. RCW 34.05.570(3)(e). Substantial evidence is that which is sufficient "`to persuade a fair-minded person of the truth of the declared premises'." Heinmiller v. Dep't of Health, 127 Wash.2d 595, 607, 903 P.2d *552 433, 909 P.2d 1294 (1995) (internal quotation marks omitted) (quoting Nghiem v. State, 73 Wash.App. 405, 412, 869 P.2d 1086 (1994)). We have also held that medical review boards are able to rely on their own expertise in evaluating medical practices. Wash. Med. Disciplinary Bd. v. Johnston, 99 Wash.2d 466, 482, 663 P.2d 457 (1983); Davidson v. Dep't of Licensing, 33 Wash. App. 783, 785, 657 P.2d 810 (1983).
¶ 12 Dr. Ames petitioned for this court's review to consider the issue of whether expert testimony should have been offered on the standard of care with regard to Ames's techniques or on the efficacy (or lack thereof) of LISTEN.[4] We accepted his invitation originally to revisit our deferential rules with regard to MQAC's factual finding absent expert testimony. Generally, Washington law does not require that expert testimony be provided to MQAC, see Johnston, 99 Wash.2d at 482, 663 P.2d 457, and allows for the members to use their own expertise to evaluate various factual questions before them and to "draw inferences from the evidence presented to them." Davidson, 33 Wash.App. at 785, 657 P.2d 810. It is not inappropriate for MQAC to draw its own conclusions as to the acceptable standard of care. See Johnston, 99 Wash.2d at 482, 663 P.2d 457. As this court said in Johnston, "[a]s to such specialized matters, we give deference to administrative expertise." Id.
¶ 13 Ames claims that the hearing he received was fundamentally flawed because the Department failed to offer expert testimony on the issues of standard of care and device efficacy. While Ames acknowledges that this court evaluates MQAC's decision for substantial evidence, he argues that our standard of review loses its meaning when at least some of the evidence is present only in the minds of the experts on MQAC's panel. Ames further contends that our prior cases involving similar issues, Johnston, Davidson, and In re Disciplinary Proceeding Against Brown, 94 Wash.App. 7, 972 P.2d 101 (1999), do not stand for the proposition that MQAC can substitute its own impressions regarding the standard of care for evidence not submitted. He asks this court to side with the numerous state courts that have rejected such a notion when reviewing medical review board decisions.[5]
¶ 4 We decline his invitation because we do not agree that our substantial evidence standard is fatally flawed in the way Ames suggests. When some expert testimony has been offered to an adjudicative board, as in this case, and the board issued findings of facts based on the expert testimony, this court does not inquire whether the expert testimony fits within some preconceived formulation. But, cases in which the evidence is simply too bare to form a credibly persuasive argument in favor of the Department's factual allegations will be vacated under the substantial evidence standard. Thus, we will review the evidence on the record to determine whether a fair-minded person could have been persuaded of its truthfulness.

ANALYSIS
¶ 15 The expert testimony on the record supports the Department's position that MQAC was able to understand and resolve issues regarding the efficacy of LISTEN. James Clark, the creator of LISTEN, testified to the machine's uses and the capabilities for which the FDA had approved the machine. AR at 2870-71. Clark testified that the device was not submitted to the FDA for any diagnosis, treatment, or curing of allergies or any other ailments. AR at 2891-92. Another expert, Dr. Richard Sherman testified that galvanic skin recorders like LISTEN do not have the ability to diagnose ailments or treat allergies. AR at 2318-19. On cross-examination, Dr. Sherman confirmed that biofeedback devices are nothing more than recorders and displayers of biofeedback. AR at 2326-31.
¶ 16 Despite such testimony, Ames testified that he used LISTEN to improve his assessment of his patients' potential allergies. AR at 2162. Further, he asserted that he understands the device to be able to detect allergies to certain foods. AR at 2160-61. Although he stated that LISTEN did not *553 treat his patients' allergies, AR at 2163, his patients testified that they understood that LISTEN helped him diagnose, treat, and cure their allergies. AR at 2207-10, 2255-56 (testimony from P1); 2698-700 (testimony from Patient Two); 2745-47 (testimony from P3). Substantial evidence leads to the conclusion that Ames was using LISTEN for purposes for which the machine was not designed or approved. As such, no additional expert testimony was necessary to demonstrate the elements of professional misconduct alleged in the statement of charges.
¶ 7 During oral argument, Ames argued that significant debate exists about the efficacy of LISTEN for diagnosing and treating allergies. However, the only evidence on the record regarding such a debate consists of statements by Ames himself. MQAC is entitled to use its expertise to conclude that the testimony of Mr. Clark and Dr. Sherman outweighed any testimony of an alleged dispute in the medical community about the way in which Ames used LISTEN. We give deference to this use of MQAC's expertise and find that substantial evidence existed on the record to support its conclusion.

CONCLUSION
¶ 18 We hold that no additional expert testimony regarding LISTEN, or Ames's use of it, was necessary. The evidence presented demonstrated by clear and convincing evidence to a layperson that he was using a machine for purposes for which it was not designed and for which he was not specifically trained. Substantial evidence exists that he led patients to believe that LISTEN could diagnose and treat allergies, when in fact it could do neither, placing these patients at risk of harm. Therefore, we conclude that MQAC's findings were supported by substantial evidence and affirm its chosen sanctions. We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON, RICHARD B. SANDERS, DEBRA L. STEPHENS and TOM CHAMBERS, JJ.
NOTES
[1] Galvanic skin response machines measure sweating from skin tissue, specifically to detect changes in sweat level in response to various stimuli. Administrative Record at 2318.
[2] "Incompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk that a patient may be harmed. The use of a nontraditional treatment by itself shall not constitute unprofessional conduct, provided that it does not result in injury to a patient or create an unreasonable risk that a patient may be harmed." RCW 18.130.180(4).
[3] "Promotion for personal gain of any unnecessary or inefficacious drug, device, treatment, procedure, or service." RCW 18.130.180(16).
[4] This court also declined review of the issue of proper notice raised by Dr. Ames.
[5] Pet. for Review at 13-14.