255 P.3d 799 (2011)
161 Wash.App. 758
Dennis E. RITTER, Appellant,
v.
STATE of Washington, BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, Respondent.
No. 40010-3-II.
Court of Appeals of Washington, Division 2.
May 11, 2011.
*800 G. Saxon Rodgers, Ditlevson Rodgers Dixon PS, Olympia, WA, for Appellant.
Jody Lee Campbell, Attorney at Law, Susan L. Pierini, Assistant Attorney General, Olympia, WA, for Respondent.
JOHANSON, J.
¶ 1 The Washington State Board of Registration for Professional Engineers and Land Surveyors (Board) suspended Dennis Ritter's professional engineering license for five years because he was convicted of three counts of first degree child molestation. Ritter appeals the Board's suspension, arguing that the Board misinterpreted and misapplied the law. We agree and reverse the Board.

FACTS
¶ 2 Ritter was a licensed professional engineer since 1991, and he began work in 1996 as public works director for the city of Lacey. Several of those who worked with Ritter at the city spoke highly of him, saying that he ably discharged his professional duties as public works director. A fellow professional engineer who worked with Ritter for over seven years remembered that Ritter continually exercised sound engineering judgment skills and that he was objective, fair, and collaborative in his dealings with the city council, staff, and private professionals. Another colleague said that Ritter's "morals and ethics were those that most strive to achieve." Board Record (BR) at 125.
¶ 3 In 2007, Ritter was convicted of three counts of first degree child molestation involving a family member that occurred in 1998. Ritter did not commit these offenses in the workplace or otherwise in any other professional capacity. Ritter's child molestation convictions were his first criminal convictions, and he has not since been accused of other similar conduct.
¶ 4 In 2008, the Board initiated disciplinary proceedings against Ritter. The Board alleged that, based solely on his child molestation convictions, Ritter had committed unprofessional conduct under RCW 18.235.130(1) and RCW 18.43.105(10).
¶ 5 The Board argued that a professional engineer makes essential decisions that affect the health, safety, and welfare of the public and that, due to his child molestation convictions, Ritter could no longer be trusted to execute his responsibilities as a professional engineer.
¶ 6 An affidavit from George Twiss, the Board's executive director, supported the Board's theory. Twiss's affidavit stated that an engineer must have good character and reputation because the public views engineers as respected and trusted service providers. Twiss maintained that Ritter's child molestation convictions contradict and violate the public's trust in engineers.
*801 ¶ 7 Ritter argued that the child molestation convictions did not affect his technical skill as a professional engineer. Ritter testified that after the molestation occurred, he continued to sign city engineering plans, attesting that they were ready for construction and that they met all city requirements.
¶ 8 Ritter also submitted several letters from fellow professional engineers stating that he was a capable engineer who maintained a high degree of professionalism. In one letter, a professional engineer who worked with Ritter at the city for six years stated, "As a leader, a manager, and engineer, [Ritter] always conveyed himself as the consummate professional." BR at 115. Another professional engineer who worked with Ritter for nine years at the city wrote that "[Ritter] demonstrated the highest character in his professional conduct.... [He] is an outstanding professional engineer who is an asset to the engineering profession." BR at 123.
¶ 9 The Board entered findings of fact that Ritter was convicted of three counts of third degree[1] child molestation. The Board found that Ritter had been sentenced to 130 months of community custody, which required him to register as a sex offender and prohibited him from having contact with minor childrenexcept his 17-year-old son unless he is supervised by an adult who is aware of his convictions.[2]
¶ 10 Based on RCW 18.235.130(1) and RCW 18.43.105(10), the Board entered the following relevant conclusions of law:
3.4 First degree child molestation is an act of moral turpitude.
3.5 Professional engineers are regulated and licensed by the state of Washington in order to safeguard life, health and property, and to promote the public welfare.
3.6 An engineer is required to demonstrate he or she is qualified to practice as an engineer in order to be licensed.
3.7 "Good character and reputation" are included in the statutorily required qualifications for licensing to practice as a professional engineer.
3.8 Respondent's crimes are inconsistent with the statutory requirements of good character and reputation.
3.9 Respondent's crimes are contrary to the conduct and standards generally expected of those practicing professional engineering.
3.10 Respondent's crimes constitute unprofessional conduct under RCW 18.235.130(1) and constitute prohibited conduct under RCW 18.43.105(10), for which discipline may be imposed.
BR at 158. The Board suspended Ritter's professional engineering license for a minimum of five years. Ritter now appeals the superior court's decision that upheld the Board's suspension.

STANDARD OF REVIEW
¶ 11 The Board is an administrative agency and the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs our review of the Board's decisions. RCW 34.05.510; RCW 18.235.090; see Greenen v. Washington State Bd. of Accountancy, 126 Wash.App. 824, 829, 110 P.3d 224 (2005), review denied, 156 Wash.2d 1030, 133 P.3d 474 (2006). As the party asserting the invalidity of the Board's final order, Ritter has the burden of establishing such invalidity. Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 77, 11 P.3d 726 (2000). We sit in the same position as the superior court and apply the standards of review in RCW 34.05.570 directly to the agency record. Postema, 142 Wash.2d at 77, 11 P.3d 726.
¶ 12 Under the APA, we may reverse an administrative order that is based on an erroneous *802 interpretation or application of the law. RCW 34.05.570(3)(d); Ames v. Washington State Health Dep't. Med. Quality Assurance Comm'n, 166 Wash.2d 255, 260, 208 P.3d 549 (2009), cert. denied, ___ U.S. ___, 130 S.Ct. 1528, 176 L.Ed.2d 115 (2010). We review the legal decisions of an administrative agency de novo. Ames, 166 Wash.2d at 260, 208 P.3d 549. We may substitute our judgment for that of the administrative agency regarding legal issues. Ames, 166 Wash.2d at 260-61, 208 P.3d 549. But we afford substantial weight to the agency's interpretation of the law it administers, particularly when the issue falls within the agency's expertise. Ames, 166 Wash.2d at 261, 208 P.3d 549.

DISCUSSION
¶ 13 We are asked to determine whether the Board erroneously interpreted and applied the law when it suspended Ritter's professional engineering license due to his child molestation convictions. Ritter argues that the Board misinterpreted and misapplied the law under RCW 18.235.130(1) and RCW 18.43.105(10) because he did not commit child molestation while in the course of practicing engineering. He maintains that his child molestation convictions are unrelated to his practice as a professional engineer.
¶ 14 "In order to safeguard life, health, and property, and to promote the public welfare, any person in either public or private capacity practicing or offering to practice engineering or land surveying, shall hereafter be required to submit evidence that he is qualified so to practice and shall be registered." RCW 18.43.010. To effectuate this legislative intent, the Board may discipline a professional engineer for "any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession." RCW 18.235.130(1). The Board may also discipline a professional engineer for any act that is "customarily regarded as being contrary to the accepted professional conduct or standard generally expected of those practicing professional engineering." RCW 18.43.105(10). We address the Board's authority to discipline Ritter under these two statutes in turn; to do this, we begin with the rules of statutory interpretation.
¶ 15 Statutory interpretation is a question of law that we review de novo. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 607, 998 P.2d 884 (2000). Our goal is to ascertain and to carry out the legislature's intent, which we derive primarily from statutory language. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). We first examine a statute's plain language. If the language is plain and unambiguous, we derive the statute's meaning solely from its language. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4. But if the language is ambiguous or unclear, meaning that it is susceptible to two or more reasonable interpretations, we examine the statute as a whole to determine what the legislature intended. City of Seattle v. Holifield, 170 Wash.2d 230, 240, 240 P.3d 1162 (2010); Campbell & Gwinn, 146 Wash.2d at 10, 43 P.3d 4. We also may consider the statutory scheme as a whole, including related statutes, if we determine that the plain meaning cannot be derived from the statutory provision at issue and ambiguity necessitates further inquiry. Campbell & Gwinn, 146 Wash.2d at 10, 43 P.3d 4.
¶ 16 The first statute the Board relied on to discipline Ritter unambiguously requires the proscribed act to relate to the practice of professional engineering. RCW 18.235.130(1). But the second statute the Board relied on to discipline Ritter, RCW 18.43.105(10), does not have an unambiguous requirement that the punishable conduct must relate to the practice of professional engineering. We must turn to examine the statute as a whole to determine what the legislature intended.
¶ 17 Reviewing RCW 18.43.105, we notice that every provision involves an affirmative act or failure to act while in the course of professional duties. For example, the Board may discipline a professional engineer for nondisclosure, unfair competition, or improper advertising, all of which would necessarily occur in the professional setting. RCW 18.43.105(7), (8), (9). Consistent with the statute as a whole, the statute's catch-all *803 proviso, RCW 18.43.105(10), has an implicit requirement that the proscribed conduct must somehow relate to the profession, as it gives the Board authority to punish for any act "contrary to the accepted professional conduct." (Emphasis added). Further supporting our understanding that RCW 18.43.105(10) requires a nexus between the alleged misconduct and professional conduct is that the related and more specific RCW 18.235.130(1) explicitly requires such a nexus.
¶ 18 We hold that in order for the Board to suspend the license of a professional engineer under RCW 18.235.130(1) for a proscribed act "relating to" professional engineering or under RCW 18.43.105(10) for not exhibiting "accepted professional conduct," the Board must first find a nexus between the misconduct and the profession. Our view that both statutes require such a nexus protects the licensee's substantive due process interest in maintaining his license.
¶ 19 The determinative question, then, is whether Ritter's child molestation convictions have a nexus with, or relate to, the practice of professional engineering. RCW 18.235.130(1); see RCW 18.43.105(10). This is a mixed question of law and fact.
¶ 20 Our Supreme Court has previously considered what it means for conduct to relate to a certain profession. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 818 P.2d 1062 (1991). In Haley, the court considered whether Dr. Haley's sexual relationship with an underage former patient related to the medical profession. Haley, 117 Wash.2d at 731, 818 P.2d 1062. Similar to RCW 18.43.105, Dr. Haley could be disciplined for "`[t]he commission of any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession.'" Haley, 117 Wash.2d at 731, 818 P.2d 1062 (citing former RCW 18.130.180(1) (1987)). The court construed the "`related to' requirement as meaning that the conduct must indicate unfitness to bear the responsibilities of, and to enjoy the privileges of, the profession." Haley, 117 Wash.2d at 731, 818 P.2d 1062. The court held that the "conduct need not have occurred during the actual exercise of professional or occupational skills, nor need the conduct raise general doubts about the individual's grasp of those skills." Haley, 117 Wash.2d at 733, 818 P.2d 1062. Instead, the "conduct may indicate unfitness to practice medicine if it raises reasonable concerns that the individual may abuse the status of being a physician in such a way as to harm members of the public, or if it lowers the standing of the medical profession in the public's eyes." Haley, 117 Wash.2d at 733, 818 P.2d 1062.
¶ 21 The Haley court then applied this rule to the facts. The court reasoned that Dr. Haley's conduct raised reasonable concerns that he may abuse his status as a physician because the board found that he exploited his position of psychological power and authority over the victim to facilitate their improper sexual relationship. Haley, 117 Wash.2d at 735, 818 P.2d 1062. Dr. Haley exercised this power and authority over the victim "solely by virtue of the relationship he had established with her when he was her surgeon." Haley, 117 Wash.2d at 735, 818 P.2d 1062. The court also reasoned that Dr. Haley's conduct cast disrepute on the medical profession in the eyes of the public because "[t]he public expects a physician to decline the flirtations of a confused adolescent, not take them as an opportunity for sexual exploitation." Haley, 117 Wash.2d at 736, 818 P.2d 1062.
¶ 22 In our review of the record, we do not have reasonable concerns that based solely on his convictions, Ritter would abuse his status as a professional engineer. Unlike Haley, in which the professional was a physician who had child patients, the record shows that Ritter is a professional engineer whose business is done with adults. When professionals regularly interact with children, such as physicians or attorneys, and when the evidence in the record shows that the professional used their skill or standing to take advantage of children, courts could reasonably say that a child molestation conviction relates to the practice of that professional. E.g., Haley, 117 Wash.2d 720, 818 P.2d 1062. But where, as here, the record does not show that Ritter regularly interacted with children or that Ritter used his professional position to take advantage of children, we cannot say that Ritter's child molestation convictions are *804 related to the practice of professional engineering.
¶ 23 Instead, the child-abuse incident that led to this litigation was committed more than a decade earlier, and since this misconduct, Ritter has not deviated from his track record of maintaining a high degree of professionalism in his engineering activities. Ritter admitted to the child abuse, sought treatment, and has not shown any predatory propensities. The dissent argues that nothing would prevent Ritter from working in places where children lack adequate protection; but this argument overlooks the 130 months of community custody conditions of his sentence, which require him to register as a sex offender and prohibit him from having contact with minors. Dissent at 804. In our view, the record does not contain indicia of evidence that Ritter has or would use his profession to abuse children.
¶ 24 Nor can we say that Ritter's convictions undermine the collective profession. Child molestation is certainly a heinous crime, but, absent substantial evidence to support a nexus between Ritter's conviction and his practice as a professional engineer, even though his convictions may undermine his individual standing in the community, his convictions cannot be said to undermine the collective profession.
¶ 25 We hold that the Board misinterpreted and misapplied the law when it suspended Ritter's professional engineering license based solely on his convictions for child molestation that had no relation or nexus to his profession. We reverse.
I concur: QUINN-BRINTNALL, J.
PENOYAR, C.J.
¶ 26 I respectfully dissent. A professional engineer meets with clients on a regular basis, and the Board of Registration for Professional Engineers and Land Surveyors (the Board) was not required to assume that Ritter's practice will always be in controlled business settings with only adults present or that, as a convicted felon, he will obey the restriction imposed on him that he not have contact with children. With a professional engineer's license, Ritter's work could take him to clients' homes and other venues where children could be present, such as a school. With no mechanism available to warn these children's parents of Ritter's convictions, Ritter's work as a professional engineer could easily lead to him seeking or performing services in places where children will not be adequately protected. I find no fault with the Board's determination that Ritter committed acts "involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession," Administrative Record (AR) at 157 (quoting RCW 18.235.130(1)); and acts "customarily regarded as being contrary to the accepted professional conduct or standard generally expected of those practicing professional engineering." AR at 158 (quoting RCW 18.43.105(10)).
¶ 27 Moreover, the Board correctly noted that "good character and reputation" are statutorily required qualifications for licensure to practice as a professional engineer. AR at 158; Clerk's Papers at 8. RCW 18.43.040(2) provides, "No person shall be eligible for registration as a professional engineer... who is not of good character and reputation." This statute contains professional registration prerequisites that are separate and distinct from an applicant's conduct and competency as an engineer. Thus, even if the majority is correct that RCW 18.235.130(1) and RCW 18.43.105(10) require a nexus between the conduct in question and one's professional practice, no such nexus is present in RCW 18.43.040(2)'s prerequisites for professional registration. Accordingly, since the Board quoted from and thus relied upon RCW 18.43.040(2), I would hold that it did not err in suspending Ritter's professional license.
¶ 28 Further, since professional engineers are statutorily required to be "of good character and reputation," I disagree with the majority's view that Ritter's multiple child molestation convictions fail to bring disrepute to the engineering profession.[3] Had the *805 Board not acted to censure Ritter, public disrepute of the profession surely would have followed. For these reasons, I respectfully dissent.
NOTES
[1] Ritter's judgment and sentence indicate that he was found guilty of three counts of first degree child molestation. The Board's findings of fact state that he was found guilty of "three separate counts of child molestation in the third degree." BR at 156. We note the Board's scrivener's error but conclude that it has no affect on the outcome on appeal. An erroneous finding of fact that does not materially affect conclusions of law is not prejudicial. State v. Caldera, 66 Wash.App. 548, 551, 832 P.2d 139 (1992).
[2] Ritter received a special sexual offender sentencing alternative for his child molestation convictions.
[3] Sex offenses, especially against children, carry particular opprobrium. Indeed, the legislature treats such crimes differently in many contexts, including here, where RCW 18.235.130(1)'s last sentence exempts sex offenders from application of RCW 9.96A.020's restoration of employment rights for those convicted of "a felony." See RCW 18.135.130(1); RCW 9.96A.020.