IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARLENE A. TOWNSEND, Ph.D., | ) | No. 34754-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF HEALTH, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, A.C.J. — Darlene Townsend, PhD, appeals a superior court decision affirming an administrative order suspending her license as a marriage and family therapist for four years. We affirm.

FACTS

*Factual background*[1]

This case arises from the therapeutic treatment of three members of the same family. In April 2008, Darlene Townsend, PhD, a licensed family and marriage therapist, began treating "Client A" at her local practice in Spokane. These therapy sessions

---

[1] Dr. Townsend did not assign error to any of the findings of fact from her administrative hearing. Those findings are verities on appeal. *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991). This factual recitation is primarily drawn from the unchallenged findings of the health law judge (HLJ) and the administrative review officer. The one substantive difference between the findings of the HLJ and the review officer is noted near the end of the factual summary.

continued until 2012, totaling approximately 170 visits.[2] Dr. Townsend provided Client

A with individual, marriage, and family therapy. In November 2009, Dr. Townsend

began seeing six-year-old "Client B." Client A is Client B's mother. Dr. Townsend's

sessions with Client B continued until February 2012. In 2010, Dr. Townsend began

providing therapeutic treatment to Client B's father (Client C). Client C was married to

Client A at the time. Dr. Townsend provided Client C with individual, marriage, and

family therapy. Dr. Townsend developed treatment plans for Client A and Client B in

June 2008 and December 2009, respectively. By the end of 2010, Dr. Townsend was

providing therapy to Client A (the mother), Client B (the child), and Client C (the father).

During the course of treating this family, Dr. Townsend provided Client A with

small gifts such as teas, herbal remedies, creams, books, and informational pamphlets on

herbal remedies. Dr. Townsend also loaned Client A "two garments described as a white

wool floor length cape and a red or orange floor length coat" that Client A intended to use

for a business venture. Administrative Record (AR) at 387. When Client A's therapy

was terminated, Dr. Townsend sought Client C's help in getting the garments returned

to her.

---

[2] The names of Dr. Townsend's patients that are the subject of the charges against her are confidential. We follow the practice adopted in the administrative and superior court proceedings of not referring to these individuals by their proper names.

During the course of treating Client A and Client B, Dr. Townsend suggested Client B would benefit from antidepressants, including St. John's Wort, an over-the-counter supplement. Dr. Townsend had previously sold (at cost) a form of St. John's Wort to Client A, and Client A felt pressured by Dr. Townsend to provide the same supplement to Client B.

In August 2011, Dr. Townsend sent a letter to Client B's primary care physician in which she recommended treatment, suggesting specific medications and dosages, for attention deficit hyperactivity disorder (ADHD). Dr. Townsend also suggested that Client B might need antidepressants in the future. The physician called Dr. Townsend to discuss this letter. The physician expressed concern because he had "never received a letter from a [psychotherapist] giving . . . suggestions for not only a certain class of medication, but a brand name and dose." AR at 421. The physician was also concerned that Dr. Townsend's suggested dosage was four times the recommended amount. The physician was also wary of possible interactions between ADHD medication and Client B's other medications. When the physician brought up St. John's Wort, Dr. Townsend stated it was Client A's idea. The physician then stated Client A had told him differently, and Dr. Townsend replied that Client A was untruthful and difficult. Dr. Townsend then began to describe, in detail, all of the difficulties she experienced with Client A. The

3

physician reminded Dr. Townsend of privacy obligations and redirected the conversation back to Client B.

Also in 2011, Dr. Townsend attended a meeting at Client B's school. Client A, Client C, the principal, and other school staff were also in attendance. The purpose of the meeting was to discuss Client B's educational needs. Unprompted, Dr. Townsend began discussing masturbation as a behavior associated with Client B. Client A and Client C were shocked, embarrassed, and confused by this because they were not aware Dr. Townsend would raise the topic of masturbation. The principal and school staff were also shocked as they had never observed this behavior in Client B.

Near the end of 2011, Client A learned of a civil lawsuit against Dr. Townsend that resulted in a significant money judgment. Client A was concerned she could lose Dr. Townsend as a therapist and asked about the lawsuit. The relationship between Dr. Townsend and Client A changed noticeably after this point, with Client A feeling as though she was the "bad kid" or "in the dog house." AR at 390, 1420. This deterioration in the relationship continued and Dr. Townsend became suspicious that Client A was trying to set up a lawsuit and obtain a money judgment of her own. Client A discontinued treatment with Dr. Townsend during January 2012, but on February 5 Dr. Townsend sent Client A a treatment termination letter and a treatment termination summary seeming to

suggest that Dr. Townsend had terminated therapy. Dr. Townsend also gave Client A

a discharge diagnosis of several personality disorders. These diagnoses were contrary to

what Dr. Townsend indicated in therapy and, coupled with the sudden loss of treatment,

had a profound effect on Client A's mental state. Around this time, Dr. Townsend sent

another letter to Client B's physician admonishing the physician and accusing him of

threatening her professional license, while also describing more of the issues she

experienced during the course of Client A's treatment.

*Procedural background*

In May 2013, Client A filed a complaint against Dr. Townsend with the

Washington State Department of Health. The Department issued a statement of

charges, alleging Dr. Townsend had committed unprofessional conduct in violation

of RCW 18.130.180(4).

In a prehearing order, the health law judge (HLJ) outlined what evidence had been

accepted for the hearing. The Department was allowed to call the nine witnesses it

identified prior to the hearing, and Dr. Townsend was allowed to call the one witness she

identified. Dr. Townsend identified another witness late, and this witness was not

allowed to testify. Only five of the Department's witnesses ultimately testified. The

Department was also allowed to introduce all of the documentary evidence it identified

prior to the hearing. The HLJ rejected an "[u]nknown number of unidentified exhibits" that Dr. Townsend sought to admit during the prehearing conference. AR at 107. However, most of the exhibits offered by Dr. Townsend were duplicative of those offered by the Department.

Relevant to this appeal, Dr. Townsend, Client A, Client C, Client B's school principal, and an expert witness for the Department testified at the July 21-22, 2015, adjudicative hearing. The HLJ found testimony from Client A, Client C, the principal, and the Department's expert witness to be persuasive and credible. Based on this testimony and the documentary evidence admitted during the hearing, the HLJ found that Dr. Townsend practiced below the standard of care by: (1) treating multiple family members individually, causing role confusion and undermining objectivity, (2) suggesting medication and dosages to Client B's physician, (3) discussing the masturbation behavior of Client B at the 2011 school meeting, (4) providing gifts and loaning clothing to Client A during the course of treatment, and (5) failing to clearly identify, define, and update a treatment plan for Client A.

The Department requested sanctions under "Tier B" of the sanction schedule for practice below the standard of care. WAC 246-16-810. The Department also identified several aggravating factors, including Dr. Townsend's past discipline for similar conduct

and her refusal to acknowledge wrongdoing. WAC 246-16-890(2)(b), (3)(f). The HLJ

agreed that the facts underlying Dr. Townsend's previous misconduct were similar to the

facts here, meaning the prior sanctions did not have a sufficient deterrent effect. The HLJ

found the Department had proved Dr. Townsend committed unprofessional conduct as

defined in RCW 18.130.180(4).[3] The HLJ suspended Dr. Townsend's license to practice

as a marriage and family therapist for four years. Dr. Townsend was barred from seeking

reinstatement for four years, and she was required to complete 20 hours of training prior

to reinstatement. A 12-month probationary period would then follow.

Dr. Townsend appealed to an administrative review officer alleging numerous

errors in the hearing. The review officer considered and rejected those arguments. The

review officer then issued nearly identical findings of fact and conclusions of law as the

HLJ. The only substantive difference is that the review officer found Dr. Townsend's

disclosure of confidential information about Client A to Client B's physician also fell

below the standard of care.[4] The review officer otherwise made the same credibility

---

[3] Due to uncertainty about the appropriate evidentiary standard, the HLJ found the Department had met both the preponderance standard and the clear and convincing standard.

[4] The review officer also found that because the adverse civil judgment and resultant agreed order with the Department in the previous case of misconduct occurred in October and November 2011, it was not reasonable to expect Dr. Townsend to have learned from her experiences in that case in time to alter her behavior in the present case.

findings as the HLJ and imposed the same sanctions in the final administrative order.

Dr. Townsend then sought review in superior court. The review officer's decision was

affirmed. Dr. Townsend now appeals to this court.

ANALYSIS

*Substantial evidence*

Dr. Townsend was charged with unprofessional conduct under the Uniform

Disciplinary Act (UDA), chapter 18.130 RCW. The UDA grants the Department of

Health the authority to discipline persons licensed as marriage and family therapists.

RCW 18.130.040(2)(a)(x), (3); *see also* former RCW 18.130.020(2)-(3) (2008). If an

investigation gives the Department reason to believe a therapist has committed

unprofessional conduct, as defined in RCW 18.130.180, the Department serves a

statement of charges on the therapist, and the therapist may request a hearing. RCW

18.130.090(1). This hearing is governed by the Administrative Procedure Act (APA),

chapter 34.05 RCW. RCW 18.130.100. If the hearing results in a finding of

unprofessional conduct, sanctions may be imposed such as a reprimand, probation,

suspension, or revocation of license. RCW 18.130.160. Under the APA, a license holder

may appeal an adverse finding to superior court and eventually to this court and beyond.

*See* RCW 34.05.514, .526.

In this court, when reviewing agency action, the standards of the APA are applied directly to the agency record. *Ames v. Dep't of Health, Med. Qual. Assurance Comm'n*, 166 Wn.2d 255, 260, 208 P.3d 549 (2009). Relevant here, this court may reverse an administrative order if it is not supported by substantial evidence. *Id.*; RCW 34.05.570(3)(e). The party asserting invalidity of an agency action carries the burden of demonstrating the invalidity. RCW 34.05.570(1)(a). This court's task is to determine if substantial evidence supports the findings of the administrative agency. *Ames*, 166 Wn.2d at 261. "Substantial evidence is that which is sufficient 'to persuade a fair-minded person of the truth of the declared premises.'" *Id.* (quoting *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d 433 (1995)). This court does not reweigh the evidence. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 103, 187 P.3d 243 (2008). Nor does this court disturb credibility findings when, as here, the credibility findings of the HLJ and the review officer are not in conflict. *See Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 19 n.11, 256 P.3d 339 (2011).

Dr. Townsend appears to argue that substantial evidence does not support the six different findings of the review officer that she practiced below the standard of care in the course of treating Client A, Client B, and Client C. To the extent Dr. Townsend makes

9

this claim, she is incorrect. The record contains substantial evidence to support each finding against Dr. Townsend. Each finding is addressed in turn.

> *Treating multiple family members causing role confusion and blurring therapeutic objectives*

Dr. Townsend testified that she simultaneously saw Client A, Client B, and Client C for therapy between 2010 and 2012. From her own testimony, it is apparent that Dr. Townsend was not cognizant of boundaries or a need for boundaries in these overlapping therapies. Dr. Townsend never clearly delineated what the treatment objectives were for each client or what steps she took to avoid blurring the lines between each client's individual needs. The testimony of Client A and Client C paints a similar picture. In addition, the client testimony shows that Dr. Townsend frequently brought up issues raised in Client B's therapy with Client A and Client C during their own individual and group sessions.

The Department called an expert witness to testify as to the standard of care for marriage and family therapists in Washington and whether or not Dr. Townsend's treatment of Client A, Client B, and Client C met that standard. That expert had a master's degree and certificate in addiction treatment from Seattle University, membership in two clinical professional organizations, 30 years of experience and continuing education, and 22 years of experience in private practice. The expert also

reviewed approximately 700 pages of documents prior to testifying, including the treatment records generated by Dr. Townsend. The expert testified that Dr. Townsend's actions in treating multiple family members created role confusion and undermined therapeutic objectivity. The expert described how Dr. Townsend's actions would have made it extremely difficult to effectively treat the issues that Client A came to Dr. Townsend for. The expert also described Dr. Townsend's actions as creating a "severe problem in the treatment of Client A." AR at 1557. One of issues for Client A was her inability to establish proper boundaries with other people, and by not establishing proper boundaries between therapies for different clients, Dr. Townsend essentially compounded the issue for Client A.

The combined testimony of Client A, Client C, and the expert witness constitute substantial evidence that supports the finding that Dr. Townsend practiced below the standard of care by treating multiple family members.

*Recommending medication for Client B to his physician*

The letter Dr. Townsend sent to Client B's physician is part of the administrative record. In this letter, Dr. Townsend suggests medication and dosages for ADHD, and also suggests that Client B may need antidepressants in the future. Client A testified that she remembered Dr. Townsend making this suggestion to the physician. The expert

11

witness testified that such action by a family and marriage therapist is not appropriate because a therapist's training does not quality them to prescribe medication or suggest medication and dosages to a licensed medical doctor. Nor is it appropriate for a therapist to send such a letter without obtaining a release of information from the client. The letter and the testimony from Client A and the expert are substantial evidence that support the finding that Dr. Townsend recommended medication and specific dosages for Client B to his physician, and that this action fell below the standard of care.

*Violating Client B's confidentiality at the 2011 school meeting*

Three witnesses testified about the 2011 school meeting: Client A, Client C, and the school principal. All three witnesses testified that Dr. Townsend was present at the meeting and, out of the blue, brought up masturbation behavior by Client B as a topic the school officials needed to address or be aware of. The principal testified that this disclosure left him and others present shocked, confused, and uncomfortable. Client A and Client C had no advance warning that Dr. Townsend was going to make this disclosure, nor did they authorize her to make it. Dr. Townsend's doing so made both parents feel very uncomfortable. The expert witness testified that this disclosure fell below the standard of care, especially since none of the teachers had ever reported an issue with Client B masturbating at school, and there was no release from the parents

giving Dr. Townsend permission to divulge treatment information to school officials.

Taken together, this testimony provides substantial evidence to support the finding that

Dr. Townsend practiced below the standard of care when she spoke about masturbation

behavior by Client B at the 2011 school meeting.

*Violating Client A's confidentiality in letters to Client B's physician*

In her phone call with Client B's physician, Dr. Townsend disparaged Client A's

character and labelled her as being untruthful, and described to the physician all of the

difficulties Dr. Townsend claimed to be having with Client A.  A summary by the

physician of this phone call is part of the administrative record.  Also, in her second letter

to the physician, Dr. Townsend continues to disparage Client A while also attacking the

physician.  Dr. Townsend discusses Client A's marital issues and explains how she

believes Client A is untruthful, irresponsible, and the cause of many of Client B's issues.

Client A testified how these statements shocked her and created the impression that

Dr. Townsend was trying to cause Client A to lose custody of Client B.  The expert

witness testified that the "language used and the confidentiality broken" in this letter

"was very surprising to [her] in its lack of [professionalism]."  AR at 1569.  She testified

that this letter could only serve to heighten Client A's stress level and it fell below the

standard of care.  The letter and testimony surrounding it are substantial evidence

supporting the finding that Dr. Townsend practiced below the standard of care when she

divulged confidential information about Client A to Client B's physician.

*Crossing therapist-client boundaries by providing gifts to Client A during treatment*

Client A testified that Dr. Townsend provided gifts and loaned her multiple items

during the course of therapy, including two dresses that Client A then used for a business

project. After Client A ended treatment, Dr. Townsend asked for the dresses back and

sought help from Client C in getting them returned. The expert witness described this

action by Dr. Townsend as "dangerously below the standard of care." AR at 1583. The

expert described how, given the length of the relationship between Client A and

Dr. Townsend, and Client A's need for help in establishing appropriate boundaries, it

was highly unprofessional for a therapist to loan anything at all to such a client. This

testimony is substantial evidence that supports the finding that Dr. Townsend practiced

below the standard of care and crossed therapist-client boundaries when she loaned or

gifted items to Client A.

*Failure to define and update Client A's treatment plan*

Last, the administrative record contains a single treatment plan for Client A that

was developed in June 2008. There is no updated treatment plan in the record. The

closest record resembling an update is a treatment termination summary that was

generated when Client A terminated sessions with Dr. Townsend. Dr. Townsend testified that there was basically no change to Client A's treatment plan over the nearly four years that she saw her. Client A testified that Dr. Townsend never told her how her treatment would develop, how progress would be measured, or what the treatment goals were. She further testified that Dr. Townsend never really addressed the issues that originally led Client A to seek therapy. The expert witness testified that Dr. Townsend's failure to develop a long-term treatment plan was "far below the standard of practice." AR at 1555. Overall, this testimony and the exhibits admitted by the HLJ are substantial evidence that supports the finding that Dr. Townsend practiced below the standard of care by failing to define and update Client A's treatment plan.

*Procedural unfairness*

In various portions of her brief, Dr. Townsend alleges the administrative hearing was unfair. She claims that the HLJ was biased against her, that she was not provided ADA accommodations, and that she was not allowed to present certain evidence or witnesses. Contrary to the requirements of RAP 10.3(a)(6), Dr. Townsend does not cite to any legal authority and provides almost no citations to the record. Dr. Townsend's failure to comply with the rules of appellate procedure materially hinders this court's ability to review her claims. Accordingly, we decline to address Dr. Townsend's

No. 34754-1-III
*Townsend v. Dep't of Health*

procedural arguments. *Brownfield v. City of Yakima*, 178 Wn. App. 850, 875-76, 316 P.3d 520 (2013).

## CONCLUSION

The decision of the superior court is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

16